J-A12012-17

2017 PA Super 394

| EVAN D. FORD AND MARGARET L. FORD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| JOHN P. OLIVER AND CYNTHIA V. OLIVER, HUSBAND AND WIFE, BLANE PUSKARIC, ESQUIRE, EQT PRODUCTION COMPANY AND EQUITRANS, L.P. | |
| | No. 670 WDA 2016 |

Appeal from the Order Dated March 22, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-13256

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

OPINION BY SOLANO, J.:                     **FILED DECEMBER 14, 2017**

In this dispute over the validity of a deed, Appellants Evan D. Ford and Margaret L. Ford appeal from the March 22, 2016 order sustaining the preliminary objections of Appellees John P. Oliver and Cynthia V. Oliver; Blane Puskaric, Esquire; EQT Production Company; and Equitrans, L.P., and dismissing the Fords' claims against Appellees with prejudice.[1]  We affirm.

This case arises out of the 2001 sale of property by the Fords to Appellee John P. Oliver.  The Fords allege that they intended to sell only one parcel of vacant land ("Parcel One") to Oliver, and that, after the closing, the

_____

[1] The March 22, 2016 order became final and appealable on April 19, 2016, when the trial court granted the Fords' motion to discontinue the action against the remaining defendants, Dale Property Services Penn, LLC and Landco USA, Inc.  **See** Pa.R.A.P. 341; **Baker v. Cambridge Chase, Inc.**, 725 A.2d 757, 762 (Pa. Super.), **appeal denied**, 745 A.2d 1216 (Pa. 1999).

closing agent erroneously included in the deed (the "Original Oliver Deed") the legal description not only of Parcel One, but also of another parcel, which contained mineral rights ("Parcel Two").[2] The Fords learned the Original Oliver Deed included both parcels in 2015, when they attempted to sell the Parcel Two mineral rights to EQT and a representative of EQT informed them that a third party had already transferred those rights to EQT.

The Fords, who are siblings, received the two parcels of land at issue in 1996, in a single deed from their mother ("the Original Ford Deed"). Parcel One is approximately 50 acres of vacant land in Jefferson Hills, Allegheny County, and it contains an exception for certain coal and mineral rights. Original Ford Deed, pp. 1-2. Parcel Two consists of "ALL oil, gas, coal or other minerals, together with all mining rights and other rights of any nature or kind whatsoever . . . owned by the grantor . . . within the limits of Allegheny County, Pennsylvania." *Id.*, p. 2 (capitalization in original).

In the spring of 2001, the Fords listed Parcel One for sale. They allege that they then had "no intention of selling any or all of the Parcel Two Property and/or any oil, gas, coal or other mineral rights or other property rights or interests in the 2001 sale." Second Am. Compl. ¶ 16.

---

[2] "Because this case was decided on preliminary objections, we rely on the facts as alleged in the complaint, including its exhibits." *Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 627 n.1 (Pa. Super. 2016) (citation omitted); *see id.* at 630 ("When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom" (citation omitted)).

In the fall of 2001, Appellee John P. Oliver entered into an agreement with the Fords to purchase Parcel One for $22,000.[3] The closing occurred on September 14, 2001. The U.S. Department of Housing and Urban Development (HUD) settlement statement identified the property as "VACANT LAND ON ROUTE 51, JEFFERSON HILLS, PA 15025, JEFFERSON HILLS BOROUGH, ALLEGHENY COUNTY." Second Am. Compl. Ex. 4.

At the closing, the Fords were not shown the deed and were told that it had not yet been completed. A representative of the closing agent, Landco USA, Inc., provided the Fords with the signature page of the deed only, which they signed.[4] The Fords identify Appellee Puskaric as an agent of Landco,[5] but do not allege that he was the agent who provided them with the signature page. Indeed, they state that Puskaric was not present at the closing. Puskaric, however, notarized all of the signatures on the deed. Second Am. Compl. ¶¶ 18, 23-28, 30-31.

"[A]t a later date," the closing agent completed the Original Oliver Deed and included legal descriptions of both Parcel One and Parcel Two in it. Second Am. Compl. ¶ 19. The page containing the Fords' signatures from the September 14, 2001 closing was included as page 3. The deed recited

---

[3] The Fords have been unable to locate a copy of this agreement.

[4] The Second Amended Complaint attaches a copy of the Original Oliver Deed as Exhibit 3. The third page of the deed contains three paragraphs of text, followed, in the middle of the page, by signature lines that contain the Fords' signatures. Below the Fords' signatures are another paragraph of text and a signature line for John Oliver.

[5] The Fords aver that Puskaric was also Oliver's attorney.

that the consideration for the transaction was $10,000, not $22,000. Original Oliver Deed, p. 1. While the Original Ford Deed contained the headings "Parcel One" and "Parcel Two" preceding the descriptions of the respective parcels, the Original Oliver Deed did not contain those headings. Instead, it included the description of Parcel Two immediately after the description of Parcel One and began that description with the words, "TOGETHER WITH, INCLUDING ALL oil, gas, coal or other minerals . . . ." *See id.*, p. 2 (capitalization in original). The Original Oliver Deed also contained a "SUBJECT TO and TOGETHER WITH" clause under the Parcel Two description that referenced oil and gas leases and other coal and mineral rights, *see id.*; this clause had not been in the Original Ford Deed. The Original Oliver Deed was recorded in January of 2002. The Fords claim they were not sent the Original Oliver Deed and were unaware of its content.

The Fords allege that, "[u]pon advice of prior counsel, [they] attempted to clarify the title to the Parcel 2 property by having it re-conveyed by their mother to them by deed dated July 9, 2007" ("the 2007 Ford Deed"). Second Am. Compl. ¶ 35. The Fords do not allege why they needed to "clarify the title" at that time.[6] The Fords aver that when they executed and recorded the 2007 Ford Deed, they did not know that the legal

_____

[6] In their brief, the Fords state that their attorney "suggested that the Fords would eventually need a new, clean, deed that reflected their continued ownership of the . . . 'Parcel Two' Interests after the sale of . . . 'Parcel 1,' since both properties had been listed together on the Original Ford Deed." Fords' Brief at 7. The Fords add that their attorney prepared the 2007 deed incorrectly, as though the Fords' mother still owned Parcel Two. *Id.*

description of Parcel Two had been included in the Original Oliver Deed. *Id.* ¶ 36.

At some point on or before March 9, 2009, the Original Oliver Deed was amended ("Amended Oliver Deed") to add the heading "*Parcel Two" immediately prior to the text beginning "TOGETHER WITH, INCLUDING ALL oil, gas, coal or other minerals . . . ." The amendment added: "*The purpose of this re-recording is to add the wording of Parcel Two to the legal description which was omitted from the original deed recorded in [the Washington County deed book]." Amended Oliver Deed, p. 2. The description of the property in the Original Oliver Deed was otherwise left unchanged. Oliver or Puskaric recorded the Amended Oliver Deed on March 11, 2009. Second Am. Compl. ¶¶ 38-39 & Ex. 7. The Fords were not notified of the amendment of the deed.

On March 12, 2009, Oliver entered into a five-year oil and gas lease granting Dale Property Services Penn, LLC, certain mineral rights to the property described in the Original Ford Deed as Parcel One. The March 12, 2009 lease was recorded on March 17, 2009. The Fords allege that they "were not made aware of the purported sale of gas and other mineral rights of [Parcel One] to Dale Property until early spring of 2015." Second Am. Compl. at ¶¶ 46-47 & Ex. 8.[7]

_____

[7] Exhibit 8 to the Second Amended Complaint also contains a copy of a February 19, 2009 lease from Oliver to Dale of mineral rights to four other parcels in Forward Township, Allegheny County.

In 2012, the Fords attempted to lease various Parcel Two oil and gas rights to EQT, but the two parties were unable to reach a final agreement.

On June 27, 2014, Oliver entered into an oil and gas lease with EQT for the mineral rights to Parcel One. On September 23, 2014, Oliver and his wife, Cynthia V. Oliver,[8] entered into a Subsurface Storage Easement Agreement with Equitrans, granting Equitrans an exclusive and permanent easement to transport, inject, store, retrieve, and withdraw gas from Parcel One. This easement was recorded on December 17, 2014. On February 23, 2015 and May 2, 2015, the Olivers sold additional Parcel Two mineral rights to EQT.

In the spring of 2015, Evan D. Ford contacted EQT to discuss a possible sale of part of Parcel Two. A representative of EQT advised Ford that these rights had already been transferred to EQT by a third party. The Fords then learned that Oliver had transferred the Parcel Two mineral rights to EQT and other parties.

The Fords initiated this suit on August 4, 2015, and subsequently filed a complaint, an amended complaint, and a second amended complaint. As the trial court set forth in its opinion, the Fords asserted the following claims in their Second Amended Complaint:

> Count One, against Defendants John and Cynthia Oliver, seeks Declaratory Relief that (a) the September 14, 2001 deed to John Oliver is void *ab initio* and should not have included the

_____

[8] The Second Amended Complaint does not state if or when Oliver transferred his rights to his wife.

description of Parcel Two and (b) that the later deeds from John Oliver to his wife Cynthia Oliver and to Dale, and from John and Cynthia Oliver to EQT and Equitrans are also void *ab initio.*

Count Two, against Defendants Dale, EQT and Equitrans, seeks Declaratory Relief that the transfers to Dale . . ., to EQT . . ., and to Equitrans . . . of parts of Parcel Two are the result of John Oliver's fraudulent conduct, having been based on a void deed, and those deeds are also void *ab initio*. . . .

Count Three, against Defendants Landco and Puskaric, for Malpractice related to the closing of the 2001 sale. . . .

Count Four, against Puskaric only, for Malpractice for failing to review the title insurance, sales agreement and HUD-1 (the Settlement Sheet) prior to the 2001 closing and also failing to send [the Fords] a copy of the March 11, 2009 re-recorded deed. [The Fords] also claim in this count that [Puskaric] altered the Original Oliver Deed at the direction of John Oliver to include Parcel Two.

Count Five, against Defendants Landco and Puskaric, for negligence related to the closing of the 2001 sale and the inclusion of Parcel Two in the Original Oliver Deed. . . .

Count Six, against Puskaric only, for negligence for failing to review the documents related to the transactions and thereby failing to discover the alleged inconsistencies among them, and also by failing to send [the Fords] a copy of the March 11, 2009 re-recorded deed.

Count Seven, against Dale, for negligence in its review of the chain of title. . . .

Count Eight, against EQT and Equitrans, for negligence, based on their failures (a) to properly review the chain of title, (b) to question the deed recorded on March 11, 2009, which was a photocopy of the Original Oliver Deed with the word "Parcel Two" typed in, (c) to contact the [Fords] regarding the insertion of "Parcel Two" in the re-recorded photocopy, (d) to "properly pay the rightful owners" for the real estate they received.

Count Nine, against John Oliver, Landco and Puskaric, for fraud or misrepresentation, based on the conduct alleged

regarding the 2001 deed to Mr. Oliver and the re-recording of an altered photocopy in 2009. . . .

Trial Ct. Op., 10/24/16, at 3-4.

All of the defendants except Landco filed preliminary objections to the Fords' Second Amended Complaint. Among other grounds, the defendants relied on the statute of limitations.[9] EQT and Equitrans also asserted that the Fords failed to state a claim for either declaratory relief or negligence. After oral argument on March 22, 2016, the trial court sustained the preliminary objections of the Olivers, Puskaric, Equitrans, and EQT "on the basis of the applicable statutes of limitations" and dismissed the Fords' Second Amended Complaint against those defendants with prejudice. Order, 3/22/16. Dale had asked to be dismissed from the case upon providing proof that it had not operated on the property in dispute; its preliminary objections were therefore continued.

On April 6, 2016, the Fords filed a motion to remove defendants Dale and Landco from the case. The trial court granted that motion on April 19,

---

[9] A statute of limitations defense must be raised in new matter, not in preliminary objections. **See** Pa.R.Civ.P. 1030(a). However, "[w]here a party erroneously asserts substantive defenses in preliminary objections rather than to raise these defenses by answer or in new matter, the failure of the opposing party to file preliminary objections to the defective preliminary objections, raising the erroneous defenses, waives the procedural defect and allows the trial court to rule on the preliminary objections." **Richmond v. McHale**, 35 A.3d 779, 782 (Pa. Super. 2012) (citing **Duquesne Slag Products v. Lench**, 415 A.2d 53 (Pa. 1980)); **see also S.J. v. Gardner**, 167 A.3d 136, 138 (Pa. Super. 2017). The Fords did not object to the raising of the statute of limitations defense by way of preliminary objections, and therefore the trial court properly reached the issue.

2016, thereby rendering its March 22, 2016 order final. On May 6, 2016, the Fords filed a timely notice of appeal.

On October 24, 2016,[10] the trial court filed an opinion in which it explained its decision. The court stated:

> [The Fords] admit never receiving a copy of the 2001 deed that they knew was to be sent to them after it was finalized after the closing and then recorded. They admit, *sub silentio*, doing nothing from 2002 to Spring of 2015 to obtain a copy of the deed they expected to receive and did not. Their explanation, that they believed Puskaric had a fiduciary duty to them even though they never met him and he merely (and apparently improperly) had notarized their signatures, which they themselves nevertheless acknowledge as theirs, is unreasonable. Such a long delay with no reasonable explanation bars the two counts for declaratory relief.
>
> We also considered the other relevant statutes of limitations:
>
> Count Three, against Landco and Puskaric for Malpractice should have been filed no later than two years after [the Fords] reasonably should have known the copy of the 2001 deed had not been sent to them. There is no merit to the contention that the limitations period as a matter of law did not start to run until the Spring of 2015.
>
> Count Four, against Puskaric only for Malpractice is similarly time-barred. The claim in this count that the failure to send [the Fords] a copy of the March 11, 2009 re-recorded and altered deed was also malpractice is time-barred as well.
>
> Count Five, against Landco and Puskaric for Negligence related to the 2001 closing is also similarly time-barred.
>
> Count Six, against Puskaric only, for Negligence related to the 2001 closing is similarly time-barred.

_____

[10] On November 2, 2016, the trial court issued a statement correcting clerical errors in its original opinion. All references to the trial court opinion in this opinion refer to the corrected opinion.

Count Seven, against Dale for Negligence [was withdrawn by the Fords].

Count Eight, against EQT and Equitrans, for their allegedly negligent failure to properly review the chain of title is time barred by the Recording Statute. We also concluded that their title was not void *ab initio* since the Declaratory Judgment counts were time-barred. We also noticed during our review of the Second Amended Complaint (but did not rule) that neither of these Defendants had any duty to *Plaintiffs* to review the chain of title and this was another, unstated, reason why we properly dismissed this count with prejudice.

Count Nine, against Oliver, Landco and Puskaric, for Fraud/Misrepresentation related to the 2001 closing. The six-year limitations period, applying the Discovery Rule, reasonably would have expired well before 2015. We properly concluded that this claim is time barred.

Trial Ct. Op. at 9-10. The trial court concluded:

We properly dismissed all counts against the Olivers, Puskaric, EQT, and Equitrans based on the expiration of the various statutes of limitations, as well as the lack of any duty owed to [the Fords] by Puskaric (who cannot be regarded as having had an attorney-client relationship with them), EQT or Equitrans[]. Leave to amend was properly not offered as no amendment was proffered that would change the result.

Declaratory relief was properly denied as untimely. The 2001 Original Oliver Deed was not *void ab initio* nor was it criminally fraudulent because it included both parcels from the prior deed to the [Fords]. At best, it might have been voidable had [the Fords] acted promptly and reasonably to protect their rights.

Since the 2001 deed to Mr. Oliver was not void *ab initio*, the deeds from him and his wife to EQT and Equitrans were also not void.

Similarly, there is no viable cause of action based on the questionable "re-recording" in March 2009 of an apparent photocopy of the 2001 deed with the words "Parcel Two" typed in. This was allegedly filed by Defendants Puskaric and

Matrix[11]. If this was fraudulent conduct, it is not fraud as to [the Fords].

*Id.* at 10-11.

In this appeal, the Fords raise the following issues, as stated in their brief:

1. Did the lower [c]ourt err in sustaining the Defendants' preliminary objections in the nature of a demurrer, stating that the deed dated September 14, 2001 and filed in the Office of the Recorder of Deeds of Allegheny County on January 9, 2002, as unilaterally amended and recorded in the Office of the Recorder of Deeds of Allegheny County . . . without authorization by or notice to [the Fords] by Defendant, John P. Oliver and his agent, Attorney Blane Puskaric, on March 9, 2009, was subject to **any** statute of limitations instead of finding the fraudulent deed void ab initio?

2. Did the lower [c]ourt err in sustaining the preliminary objections in the nature of a demurrer filed on behalf of EQT Property Management and Equitrans, L.P., based on the expiration of the statute of limitations, since any attempt to transfer the property to Defendant Oliver initially was fraudulent and void, **ab initio**, and accordingly, Defendant Oliver had no interest in the subject realty that could be conveyed?

3. Alternatively, did the lower [c]ourt err by failing to find that the discovery rule exception tolled the statute of limitations until the [Fords] discovered the actions of Defendant, John P. Oliver, and his agents in the spring of 2015?

4. Did the lower [c]ourt err in sustaining the preliminary objections in the nature of a demurrer with respect to its finding that the statute of limitations had expired using the "discovery

---

[11] The Fords alleged that Matrix Property Settlements, LLC was the "agent or representative" of Oliver that recorded the Amended Oliver Deed on March 11, 2009, and they named Matrix as a defendant. Am. Compl. at ¶ 33. They also alleged that Puskaric was "the sole principal of Matrix." *Id.* at ¶ 34. A judgment of non pros was entered against the Fords with respect to Matrix because the Fords failed to timely file a certificate of merit. **See** Pa.R.Civ.P. 1042.7.

- 11 -

exception" as recognized by Pennsylvania law, where this is an issue which must be decided by the jury?

5. Did the lower [c]ourt err in refusing to recognize that the deeds in question in this matter did in fact constitute "forged" deeds under Pennsylvania law?

6. Alternatively, did the lower [c]ourt err in sustaining the preliminary objections in the nature of a demurrer [with] respect to its finding that 21 P.S. Section 357 provided constructive notice of a purported fraudulent transfer of property to the true owner of said property even though there was nothing to alert the true owner of the purported transfer or to otherwise cause him to make inquiry as to the status of his property at the Office of the Recorder of Deeds? . . .

Fords' Brief at 3-5.

We apply the following standard of review:

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 630 (Pa. Super. 2016) (citation omitted).

**The Statute of Limitations**
**(Issues 1, 3, 4, 5, and 6)**

With the exception of their claims against EQT and Equitrans,[12] all of the Fords' issues relate to the trial court's ruling that their claims are barred by the applicable statutes of limitations. The Fords do not argue that their claims were brought within the limitations periods. Rather, they argue that no statute of limitations applies to their claims or, in the alternative, that the discovery rule tolled the limitations periods.

The Fords brought the following claims: declaratory judgment, malpractice, negligence, and fraud. This Court has held that a declaratory judgment action is subject to a four-year statute of limitations. ***Wagner v. Apollo Gas Co.***, 582 A.2d 364, 366 (Pa. Super. 1990) (relying on "catch all" statute of limitations set forth at 42 Pa.C.S. § 5525(8)); ***see also Zourelias v. Erie Ins. Grp.***, 691 A.2d 963, 964 n.2 (Pa. Super. 1997), ***appeal denied***, 706 A.2d 1214 (Pa. 1998). The statute of limitations for the malpractice,[13] negligence, and fraud claims is two years. ***See*** 42 Pa.C.S. § 5524(7) (prescribing two-year limitations period for "[a]ny other action or

_____

[12] The Fords' claims against EQT and Equitrans relate to acts that occurred in 2014 and 2015. Therefore, those claims are not barred by the statute of limitations.

[13] A malpractice action may be brought in contract or tort. ***See Wachovia Bank, N.A. v. Ferretti***, 935 A.2d 565, 570 (Pa. Super. 2007). The statute of limitations is two years for a tort claim and four years for a contract claim. ***See id.*** The Fords asserted a tort claim, so the two-year statute of limitations applies. The result here would not change if the four-year statute were applicable.

proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter").[14]

As the Supreme Court explained in **Dalrymple v. Brown**, 701 A.2d 164 (Pa. 1997):

> [T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. The statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made.

701 A.2d at 167 (quotation marks and citations omitted). For most of the Fords' claims, the statute of limitations, if applicable, would begin to run on September 14, 2001 (the date of the closing on the allegedly fraudulent Original Oliver Deed) or in January 2002, when the Original Oliver Deed was recorded. At that time, the right to institute a suit under **Dalrymple** had arisen. The two-year statute of limitations for the Fords' claims regarding the Amended Oliver Deed would begin to run no later than March 11, 2009, the date that deed was recorded.

---

[14] The trial court appears to have believed that a six-year statute of limitations applied to the fraud claim. **See** Trial Ct. Op. at 10. This Court has held, however, that "[a]n action to recover damages for injury to person or property which sounds in fraud is governed by a two-year statute of limitations." **Toy v. Metro. Life Ins. Co.**, 863 A.2d 1, 7 (Pa. Super. 2004) (referencing 42 Pa.C.S. § 5524(7)), **aff'd**, 928 A.2d 186 (Pa. 2007).

The Fords initiated this suit on August 4, 2015, well after all applicable statutes of limitations expired. We therefore proceed to consider the Fords' arguments that either (1) no statute of limitations applied to their claims, or (2) the discovery rule tolled the statutes of limitations until the Fords discovered the alleged error in the Original Oliver Deed in the Spring of 2015.

<u>*Void Deeds and the Statute of Limitations*</u>
(Issues 1, 5)

The Fords' first contention is that no statute of limitations applies to their claims because the Original Oliver Deed was forged and therefore was void *ab initio*. According to the Fords, the Original Oliver Deed and the Amended Oliver Deed are "legal nullities" because the Fords "never intended to sell or offered to sell or otherwise transfer [Parcel Two] to Oliver, or any other party, prior to early spring of 2015." Fords' Brief at 12. The Fords contend that there was never an agreement to sell Parcel Two to Oliver. ***Id.***

The trial court concluded that "[t]he 2001 Original Oliver Deed was not void *ab initio* nor was it criminally fraudulent because it included both parcels from the prior deed to the [Fords]. At best it might have been voidable had [the Fords] acted promptly and reasonably to protect their rights." Trial Ct. Op. at 11. Because the 2001 Original Oliver Deed was not void *ab initio*, the trial court concluded that the subsequent deeds were also not void. ***Id.*** We agree.

"A forged instrument being of record for a long period of time does not estop the injured party from asserting the fraud and securing its cancellation." ***Thees v. Prudential Ins. Co. of Am. of Newark***, 190 A. 895, 896 (Pa. 1937) (addressing deed with forged signatures). However, not every fraud is a forgery. In ***Commonwealth v. Sankey***, 22 Pa. (10 Harris) 390 (Pa. 1853), the Pennsylvania Supreme Court explained:

> Forgery is the fraudulent making or altering of a writing to the prejudice of another's right. . . . If every trick, or false pretense, or fraudulent act by which a person is induced to put his name to a paper which he would not otherwise have signed, is to be called a forgery, where shall we stop, and what shall be the rule? . . . [F]rauds perpetrated for the purpose of getting papers signed [are not forgeries].

***Id.*** at 395.

Here, the Fords allege that they agreed to sell Parcel One to the Olivers and attended a closing in 2001 at which they "were not presented with a completed deed containing specific real property descriptions, but instead, were presented only with the signature page that they were requested to sign." Second Am. Compl. ¶ 25; ***see id.*** ¶ 18. They accepted the $22,000 purchase price and "signed the blank signature page[] to the incomplete Deed." ***Id.*** ¶¶ 27-28. Later, the Original Oliver Deed was prepared, and it included language that conveyed both Parcels One and Two. It also included the signature page signed by the Fords; critically, the Fords admit that the signatures on that page really are theirs. The Fords say they never were provided with a copy of the Original Oliver Deed, ***id.*** ¶ 33, and their pleading makes clear that they never tried to do anything about that

failure before 2015, when they learned that they did not own the mineral rights that they then wanted to sell, *id.* ¶¶ 55-57, 59. On these facts, even if we accept the Fords' contention that the addition of the description of Parcel Two to the 2001 deed was done in a deliberate effort to defraud them, there was no "forgery." There was only the Fords' admitted, willing signature of a blank document, followed by their failure to do anything to find out what they signed.

The Supreme Court of Pennsylvania has said, "If a party, who can read, will not read a deed put before him for execution . . . he is guilty of supine negligence, which . . . is not the subject of protection, either in equity or at law." *Yohe v. Yohe*, 353 A.2d 417, 420 (Pa. 1976) (citations omitted). "We cannot rescind conveyances merely because one party later claims that he did not understand what he was signing when there was nothing to prevent him from merely reading the deed to discover its contents." *Id.*

At most, the Fords have alleged that they were induced into signing the deed under a false pretense that the deed would include language limiting the conveyance to only Parcel One. That is not forgery. *See Sankey*, 22 Pa. at 395. The Fords' failure to read the deed and seek relief from its terms until 2015 — nearly fourteen years after they signed it — precludes them from now having the deed declared void. *See Yohe*, 353 A.2d at 420.

The Fords primarily rely on cases from other jurisdictions. *See* Fords' Brief at 13-14, citing *Faison v. Lewis*, 32 N.E.3d 400 (N.Y. 2015); *Cameron Estates, Inc. v. Deering*, 123 N.E.2d 621 (N.Y. 1954); *MZRP, LLP v. Huntington Realty Corp.*, No. 35692, 2011 WL 12455342 (W. Va., Mar. 10, 2011) (unpublished memorandum). These decisions are not binding on us, but we may use them "for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Newell v. Montana West, Inc.*, 154 A.3d 819, 823 and n.6 (Pa. Super. 2017) (citation omitted). We conclude that none of these decisions support a holding in favor of the Fords because they are factually distinguishable from this case.

In *Faison*, the Court of Appeals of New York held that the plaintiff's claim seeking to set aside a mortgage was not barred by the statute of limitations because the plaintiff had alleged that the grantor's signature on the deed to the mortgaged property was forged. 32 N.E.3d at 401-02. Recognizing that, under New York law, a forged deed is "void at its inception," the court distinguished between the forged deed that was alleged in that case and a deed in which the signature was authentic, but obtained by fraudulent means:

> A forged deed that contains a fraudulent signature is distinguished from a deed where the signature and authority for conveyance are acquired by fraudulent means. In such latter cases, the deed is voidable. The difference in the nature of the two justifies this different legal status. A deed containing the title holder's actual signature reflects the assent of the will to the use of the paper or the transfer, although it is assent induced by

- 18 -

fraud, mistake or misplaced confidence. Unlike a forged deed, which is void initially, a voidable deed, until set aside, . . . has the effect of transferring the title to the fraudulent grantee, and . . . being thus clothed with all the evidences of good title, may incumber the property to a party who becomes a purchaser in good faith.

*Id.* at 403 (quotation marks and citations omitted). Here, the Fords admit that their signatures are genuine, and claim only that they were fraudulently induced into signing the Original Oliver Deed. Thus, under *Faison*, the Original Oliver Deed would be voidable and not, as the Fords claim, void. *See id.*

In *Cameron Estates* and *MZRP*, the courts held that a tax deed was void where, although the basis for the sale was delinquent taxes, there was in fact no tax delinquency on the property. *See Cameron Estates*, 123 N.E.2d at 624; *MZRP*, 2011 WL 12455342, at *4-5. Unlike *Cameron Estates* and *MZRP*, in which the sellers never had legal authority to sell the property at issue, here the Fords owned both Parcel One and Parcel Two, and thus had legal authority to sell both.[15]

The Fords also rely on the definition of forgery set forth in the Pennsylvania Crimes Code:

---

[15] For similar reasons, the Fords' reliance on *Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19 (Pa. Super. 2015), is misplaced. In *Northern Forests II*, this Court held that a void judgment was "a legal nullity that has no force or effect," and therefore could not be used to establish adverse possession. *Id.* at 35-36. The judgment at issue was void *ab initio* because the court did not have jurisdiction to enter it. *Id.* at 29-35. To the extent *Northern Forests II*, which did not pertain to the validity of a deed, is relevant here, it does not support the Fords' argument.

(a) **Offense defined.**—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

> (1) alters any writing of another without his authority;

> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S. § 4101(a). The Fords argue that this definition shows that "[t]he act of 'forgery' encompasses substantially more than unauthorized signatures." Fords' Brief at 28. However, they fail to explain how the definition of criminal forgery supports their argument that the conduct they have alleged renders the Original Oliver Deed "forged," and, in the absence of such an explanation, we fail to see how the Crimes Code definition applies here.

Finally, the Fords rely on *State v. Shurtliff*, 18 Me. 368 (Me. 1841). In *Shurtliff*, the Supreme Judicial Court of Maine held that where a grantor was shown a draft of a deed and later signed a deed in which the property description had been changed from the draft, the later deed was forged. *Id.* 370-71. The Fords cite no Pennsylvania decision that has adopted this expansive view of forgery. As the U.S. Supreme Court later recognized, the definition of forgery in *Shurtliff* is not universal. *See Moskal v. United*

*States*, 498 U.S. 103, 115-16 (1990) (noting disagreements with *Shurtliff* among jurisdictions).[16]   But even if we were to agree with *Shurtliff*, we would hold that the decision does not apply here because, unlike the victim in *Shurtliff*, the Fords do not allege that they were shown one deed and then given an altered version to sign.

In sum, we agree with the trial court that the 2001 Original Oliver Deed was not forged and not void *ab initio.*   At most, the deed was voidable. To have the voidable deed declared void, the Fords had to bring an action seeking that relief within the limitations period applicable to declaratory judgment actions.  We thus agree with the trial court's rejection of the Fords' contention that no statute of limitations applied to their claims.

<u>The Discovery Rule</u>
(Issues 3, 4, 6)

The Fords argue that even if statutes of limitations applied, they were tolled until early 2015 by the discovery rule.  The Fords further contend that whether the discovery rule applies should not have been decided on preliminary objections because that is a fact issue that must be submitted to a jury.

The trial court held that, even if the discovery rule applied, the Fords did not act with reasonable diligence because they had no reasonable explanation for "doing nothing from 2002 to Spring of 2015 to obtain a copy

---

[16] The trial court in *Sankey* expressed disagreement with *Shurtliff*.  *See Sankey*, 22 Pa. at 393.   In affirming the lower court's decision, the Pennsylvania Supreme Court did not mention *Shurtliff*.

of the deed they expected to receive and did not." Trial Ct. Op. at 9.[17] The trial court found the Fords' purported explanation — that they believed Puskaric had a fiduciary duty to them — was unreasonable and legally insufficient. *Id.* We agree.

We have explained:

> [W]here the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations. To successfully invoke the discovery rule, a party must show the inability of the injured, **despite the exercise of due diligence**, to know of the injury or its cause. A party fails to exercise reasonable diligence when it fails to make an inquiry when the information regarding the injury becomes available.

---

[17] Contrary to the argument made by the Fords on their sixth issue, the trial court did not charge the Fords with constructive notice of the contents of the Original Oliver Deed as a result of its recording under Section 2 of the 1931 Recording Act, 21 P.S. § 357, which provides:

> The legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements of the fact of the granting of such rights or privileges . . ., and the rights of the subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements shall be limited thereby with the same force and effect as if said subsequent purchasers, mortgagees, and/or judgment creditors had actually joined in the execution of the agreement or agreements aforesaid.

In its opinion, the trial court stated, "[w]hile the Recording Statute was also raised, we note that its express language refers only to 'subsequent purchasers, mortgagees and/or judgment creditors,' such as EQT and Equitrans, not to the actual parties to the Original Oliver Deed." Trial Ct. Op. at 7; *see id.* at 8 (agreeing with Fords that recording statute does not apply to Fords). The trial court's conclusion that the statutes of limitations had expired therefore was not based on a finding that the Recording Act provided the Fords with constructive notice of the contents of the Original Oliver Deed. We therefore find no merit in the Fords' sixth claim.

Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute.

Whether the statute of limitations has run on a claim is a question of law for the trial court to determine; however, application of the discovery rule involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause. Therefore, application of the rule ordinarily must be decided by a jury. **Where, however, reasonable minds would not differ in finding that a party knew or should have known [i]n the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.** The standard of reasonable diligence is an objective one.

*Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 279 (Pa. Super. 2016) (emphasis added and quotation marks and citations omitted); *see Fine v. Checcio*, 870 A.2d 850, 858-59 (Pa. 2005).

The Fords signed a deed in 2001 and have not alleged facts demonstrating that they exercised "reasonable diligence" in discovering that the deed's property description was erroneous. We agree with the trial court that, after signing a deed without seeing its property description or other content, the Fords were under an obligation to find out what they signed and to make sure that it was accurate. They easily could have satisfied that obligation by, for example, obtaining a copy of the Original Oliver Deed and reading it between September 2001 and the spring of 2015. Their failure to find out what they had signed was unreasonable as a matter of law, and this question did not require factual assessment by a jury. "[R]easonable minds would not differ in finding that" the Fords "should have known on the exercise of reasonable diligence" of the alleged error in the Original Oliver

- 23 -

Deed long before the spring of 2015. **See Mariner Chestnut**, 152 A.3d at 279. Thus, the trial court did not err in holding that the Fords' claims would be untimely even if the discovery rule applied.

## Claims Against EQT and Equitrans
### (Issue 2)

Because the claims against EQT and Equitrans are based on events in 2014 and 2015, we disagree with the trial court to the extent it concluded that these claims are barred by the statute of limitations. However, we may affirm the trial court's decision on any basis, and we affirm on alternate bases here. **See Mariner Chestnut**, 152 A.3d at 277.

### *Count Two (Declaratory Relief)*

In Count 2, the Fords sought to rescind any leases by Oliver to EQT and Equitrans on the ground that the Original Oliver Deed conveying the property that he purported to lease was *void ab initio.* The trial court held that the Fords were not entitled to this relief because their premise was false: the Original Oliver Deed was **not** *void ab initio*. **See** Trial Ct. Op. at 11. We agree. As discussed above, the Fords' factual allegations do not support their argument that the Original Oliver Deed was void. Accordingly, the Fords are not entitled to the derivative relief against EQT and Equitrans that they claimed should flow from a declaration that the deed was void. Count 2 therefore was properly dismissed.

*Count Eight (Negligence)*

In Count 8, the Fords claimed that EQT and Equitrans were negligent in entering into leases with Oliver because a proper review of the chain of title or other investigation would have disclosed that Oliver did not own the property he purported to lease. The trial court stated that neither EQT nor Equitrans owed a duty to the Fords, "and this was another, unstated, reason why we properly dismissed [Count Eight] with prejudice." Trial Ct. Op. at 10. Again, we agree with the trial court.

Under Pennsylvania law—

> In order to hold a defendant liable for negligence, the plaintiff must prove the following four elements: (1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff.

***Reason v. Kathryn's Korner Thrift Shop***, 169 A.3d 96, 101 (Pa. Super. 2017) (citation omitted). The Fords' negligence claim fails to meet the first of these requirements. They cite no Pennsylvania law recognizing a duty of a party like EQT or Equitrans on facts similar to those at issue here, and we see no basis for creating new legal duties on these facts.

In their preliminary objections, EQT and Equitrans contended that the Fords' negligence claim failed to state a claim upon which relief could be granted because the Fords could not establish that EQT and Equitrans owed the Fords a duty of care. Prelim. Objs. of EQT at ¶¶ 41-45; Prelim. Objs. of Equitrans at ¶¶ 42-46. The Fords failed to respond to this contention. ***See***

Fords' Brief in Opp'n to Prelim. Objs. of EQT, Equitrans, and Dale, at III(C) ("There may be a basis for the negligence claim against these parties" (excess capitalization removed)). The Fords did not identify any statute imposing such a duty and never explained their theory as to why EQT and Equitrans owed them any duty. **See id.**; Second Am. Compl. at ¶ 113-116. The Fords' brief to this Court still fails to provide any legal basis for a duty by EQT or Equitrans that could give rise to negligence liability.[18]

"In the negligence arena, in the absence of a relevant statute, the determination whether to impose affirmative common-law duties as a predicate to civil liability is a matter of law." **Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.**, 106 A.3d 27, 33 n.4 (Pa. 2014) (citation omitted). The Supreme Court of Pennsylvania has cautioned that "unless the justifications for and consequences of judicial policymaking are reasonably clear with the balance of factors favorably predominating, we will not impose new affirmative duties." **Seebold v. Prison Health Servs., Inc.**, 57 A.3d 1232, 1245 (Pa. 2012). The following factors are relevant in determining whether to recognize a duty: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of

---

[18] At page 25 of their brief, the Fords assert: "The Fords believe and have averred facts that will show that one or both of these [EQT and Equitrans] had or should have had knowledge that the Fords never knowingly and voluntarily transferred ownership of the Allegheny County Mineral Interests to Oliver." The brief thus relies on the Fords' "belief" regarding the parties' knowledge, not on a claim that EQT or Equitrans had a duty to investigate.

imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." **Alderwoods**, 106 A.3d at 33 (citation omitted). Recognition of a new legal duty in light of these factors requires creation of a record that would inform the broad policy judgments that must underlie that creation, and there must be a "concrete and substantial justification" for such action. **Seebold**, 57 A.3d at 1246, 1250-51; **see Newell**, 154 A.3d at 832-36. Here, the Fords have made no argument for creation of a new duty under the **Alderwoods** framework, and they provide no analysis of the five factors identified by the Supreme Court as the benchmarks for this endeavor. In the absence of such an argument, we discern no basis for creation of a new duty on the part of EQT or Equitrans here. We therefore agree with the trial court that the Fords' negligence claim against EQT and Equitrans was properly dismissed because EQT and Equitrans owed no duty to the Fords.

For the foregoing reasons, we affirm the trial court's order sustaining Appellees' preliminary objections and dismissing the Fords' Second Amended Complaint.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/14/2017