J-A28037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KEM RESOURCES, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEER PARK LUMBER, INC., | : | |
| RYVAMAT, INC., RYAN A. ANDREWS, | : | |
| MATTHEW R. ANDREWS, VANESSA | : | No. 666 MDA 2025 |
| K. DIMEOLO, RONALD A. ANDREWS, | : | |
| CITRUS ENERGY CORPORATION | : | |
| | : | |
| | : | |
| APPEAL OF: RYVAMAT, INC. | : | |

Appeal from the Order Entered April 24, 2025
In the Court of Common Pleas of Wyoming County Civil Division at
No(s):  2014-CV-857

BEFORE:    KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: DECEMBER 31, 2025**

Ryvamat, Inc. ("Ryvamat") appeals from the order imposed, following remand by another panel of this Court, awarding KEM Resources, LP ("KEM"), prejudgment interest for the period between July 21, 2008 and July 18, 2014. We affirm.

In the prior appeal, both the Superior Court panel and the Pennsylvania Supreme Court thoroughly summarized the complex factual and procedural history.  As we write for the trial court and the parties, who are well familiar with this matter, we set forth an abbreviated summary relevant to the narrow issue in this appeal — the award, if any, of prejudgment interest for the period between July 2008 and July 2014, that is properly due to KEM.

Morris S. Kemmerer owned property in Wyoming County totaling 4,619 acres (the "Kemmerer properties")[.  He sold it] in the 1950's pursuant to deeds that reserved a one-half interest in the oil, gas, and mineral rights underlying the land.

[In 1987,] Deer Park Lumber, Inc. ("Deer Park") acquired the Kemmerer properties[.]  In 2007, Deer Park filed a quiet title action . . . and obtained a default judgment that it was the sole owner of the oil, gas, and minerals located on the Kemmerer properties.

[In 2008,] Ryvamat, an entity owned by the same family that owns Deer Park, purchased the Kemmerer properties . . . including the aforementioned oil, gas, and mineral rights.  Shortly thereafter, . . . Ryvamat entered into a paid[-]up oil and gas lease[1] . . . with Unit Petroleum Company ("Unit Petroleum") . . ..

*KEM II*, 310 A.3d 142, 144-45 (Pa. 2024) (paragraph breaks added). Pursuant to this lease, on July 21, 2008, Unit Petroleum paid Ryvamat $12,644,512 (the "Lease Payment").

In 2008 and 2009, the estates of Morris Kemmerer and his son (collectively, the "Kemmerer Estates"), as well as Endless Mountains Hunting Club, Limited ("Endless Mountains"), filed petitions to strike Deer Park's quiet title judgment.  Both claimed they were the rightful owner of the one-half interest in the oil, gas, and mineral rights that Morris Kemmerer had reserved. In September 2014, the trial court granted the motions to strike the quiet title

_____

[1] "A paid-up oil and gas lease is '[a] mineral lease that does not provide for delay-rental payments and does not subject the lessor to any covenant to drill. In effect, the lessor makes all delay-rental payments, and perhaps a bonus, when the lease is signed.'" *KEM Resources, LP v. Deer Park Lumber, Inc. (KEM II)*, 310 A.3d 142, 144 n.1 (Pa. 2024) (*quoting* "Paidup Lease," BLACK'S LAW DICTIONARY (11th ed. 2019)).

default judgment. Ultimately, in May 2015, the court dismissed Deer Park's quiet title complaint with prejudice.

Meanwhile, Endless Mountains and the Kemmerer Estates continued to litigate between them the issue of which party owned the one-half interest in the oil, gas, and mineral rights. On July 18, 2014, six years after the $12,644,512 Lease Payment,

> Endless Mountains and the Kemmerer [E]states [jointly] filed a complaint in the instant action against Ryvamat and numerous . . . defendants.[2] The complaint included, *inter alia*, an action [in equity for an accounting of the Lease Payment], asserting that Endless Mountains and the Kemmerer [E]states were tenants-in-common with Ryvamat with respect to the oil and gas rights . . ..
>
> * * * *
>
> In January 2015, Endless Mountains and the Kemmerer [E]states settled their dispute, [and] conveyed to [KEM] their rights to the one-half interest in the oil, gas, and mineral rights[.] KEM was substituted as the plaintiff in this action . . ..

*KEM II*, 310 A.3d at 145.

In 2019, the trial court ordered Ryvamat to file an accounting with respect to the Lease Payment. In June 2020, the court conducted a non-jury trial. Ultimately, the trial court entered judgment in the amount of $4,513,484

---

[2] The trial court held, and this Court and the Pennsylvania Supreme Court agreed, that Endless Mountains and the Kemmerer Estates timely filed the complaint three days before the applicable six-year statute of limitations ran. *See KEM II*, 310 A.3d at 154 (applying 42 Pa.C.S.A. § 5527).

in favor of KEM, along with prejudgment interest calculated from July 21, 2008 — the date Ryvamat received the approximately $12.5 million Lease Payment.

Both parties cross-appealed to this Court, raising multiple issues. Pertinently, the panel affirmed the amount of the $4,513,484 judgment, as well as the **post-complaint** portion of the prejudgment interest, beginning on July 18, 2014, the date KEM's assignors filed this suit.[3] The panel, however, vacated the **pre-complaint** portion of the prejudgment interest, for the period between July 21, 2008 and July 18, 2014. The panel disagreed with the trial court's rationale to "automatically" award this interest "simply because KEM 'as a cotenant, is entitled to prejudgment interest, irrespective of whether [Ryvamat] had beneficial use of those funds.'" **KEM Resources, LP v. Deer Park Lumber, Inc. ("KEM I")**, 283 A.3d 362 (Pa. Super. 2022) (unpublished memorandum at 21). The panel thus remanded with directions to the trial court "to make further findings concerning whether and what length of the delay in that period[, July 21, 2008 through July 18, 2014,] was caused by KEM's assignors and to determine whether and at what rate it is equitable to award KEM interest for such periods." **Id**. at 22.

Ryvamat sought allowance of appeal with our Supreme Court, which granted it on an issue concerning the statute of limitations — a dispute not raised in this appeal. In February 2024, the Supreme Court affirmed this

---

[3] The panel also affirmed the trial court's award of simple interest at a rate of 6%.

Court's holding, and thus remanded the case to the trial court. **See KEM II**, 310 A.3d at 154.

On remand, the parties presented no new evidence, but the trial court heard oral argument in January 2025. Ryvamat reiterated that the Superior Court's remand directive was for the trial court to make findings of fact as to who caused the pre-complaint delay between 2008 and 2014. Ryvamat argued that it was KEM's assignors who litigated between them for five years, and Ryvamat played no part in that delay. **See** N.T., 1/16/25, at 21. Ryvamat also claimed it did not bear the burden of proof to disprove KEM's entitlement to the prejudgment interest, but rather KEM bore the burden to show it was entitled to it. **See id**. at 24.

The trial court preliminarily commented, "[W]ho cares what went on between Endless Mountain and the Kemmerer [E]state[s] and whose fault [it was] that it took as long as it did?" **Id**. at 13. The court then elaborated that it could not review the prior litigation and "assess what period of time was a waste of time or frivolous," "look at the court file and go piece-by-piece to see what was filed[ and] litigated," hold "a hearing on what kind of emails and communications occurred between those litigants," and thus it could not "assess blame for delay." **Id**. at 22 (unnecessary capitalization omitted).

The trial court then reasoned that both parties were "right" and "this is an equitable decision." **Id**. at 21. The court ultimately found dispositive: "The reality is that Ryvamat [has] had the money" and the use and benefit of the

money this "entire period of time," while another party, now determined to be KEM, was entitled to half of it. *Id*. at 13-14. The court thus concluded that an award of prejudgment interest for the entire pre-complaint period was fair. *See id*. at 14. The court specified that it was not alleging Ryvamat "did anything wrong," but in reviewing what is fair, it considered that Ryvamat "had the money[ and] the benefit of the use of the money[.]"[4] *Id*. at 25.

On April 24, 2025, the trial court issued the underlying order, again awarding KEM prejudgment interest for the entire pre-complaint period from July 21, 2008 through July 18, 2014. Ryvamat filed a motion for post-trial relief, but before the court ruled on it, Ryvamat filed a timely notice of appeal.[5] Ryvamat and the court have complied with Pa.R.A.P. 1925.

On appeal, Ryvamat raises four issues for our review:

1. Did the [trial] court err and abuse its discretion in its April 24, 2025 Order and Opinion when it ignored the mandate of this Court and failed to make specific findings concerning whether and what length of delay before July 2014 was caused by [KEM's] assignors?

2. Did the [trial] court commit an error of law and abuse of discretion by concluding that [KEM] was entitled to prejudgment interest from July 21, 2008 to July 18, 2014, despite the weight of the evidence demonstrating KEM was

---

[4] At the end of this hearing, the parties indicated that they would meet to discuss a possible settlement. *See* N.T., 1/16/25, at 31, 33. However, despite the trial court's urging for a settlement, they did not reach an agreement. *See id*. at 10.

[5] *See **J.P. v. J.S.**, 214 A.3d 1284, 1289 (Pa. Super. 2019) (stating that "a motion for reconsideration does not toll the appeal period unless the trial court expressly grants reconsideration within 30 days of the appealable order").

responsible for that period of delay prior to initiating this action?

3. Did the [trial] court commit an error of law and abuse of discretion by concluding that KEM was entitled to prejudgment interest from July 21, 2008 to July 18, 2014, by inappropriately placing the burden of proof on Ryvamat rather than KEM with regard to whether KEM was the cause of delay between July 21, 2008 and July 18, 2014?

4. Did the [trial] court err as a matter of law and abuse its discretion by concluding that KEM was entitled to prejudgment interest from July 21, 2008 to July 18, 2014 and finding that KEM "had no choice" but to wait six (6) years to commence the underlying action despite uncontroverted testimony in the record that KEM's predecessors in interest stalled for six years and only initiated this action at the eleventh hour to avoid the statute of limitations?

Ryvamat's Brief at 4-5.

As all of Ryvamat's issues overlap, we address them together.[6]

Ryvamat avers the trial court failed to comply with the Superior Court's remand order to consider whether KEM's assignors caused a delay, before the July 2014 filing of the underlying suit. Ryvamat further avers the trial court improperly reviewed Ryvamat's, and not KEM's, conduct.

We consider the applicable standard of review and relevant law:

"Our review of an award of pre-judgment interest is for abuse of discretion." . . .

---

[6] Although Ryvamant's statement of questions involved raises four issues, the argument section of its brief presents three, differently worded main headings. We remind counsel that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type . . . — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a).

When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. . . .

* * * *

Our courts have generally regarded the award of [pre-judgment] interest as not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court. . . . While the general rule is that a successful litigant is entitled to interest beginning only on the date of the verdict, it is nonetheless clear that ***pre-judgment interest may be awarded when a defendant holds money or property which belongs in good conscience to the plaintiff***, and the objective of the court is to force disgorgement of his unjust enrichment. Pre-judgment interest in such cases is a part of the restitution necessary to avoid injustice.

"The fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing."

***Linde v. Linde***, 220 A.3d 1119, 1150 (Pa. Super. 2019) (citations omitted

and emphasis added).

Additionally, the Pennsylvania Supreme Court has stated:

[A]lthough it may appear unreasonable to require appellant to pay interest for a long period when it had no control over the litigation, it appears equally unreasonable to deprive appellees of the fruit

- 8 -

> of the use of their money during a period when they also had no control over the course of the litigation.

**Schiller v. Royal Maccabees Life Ins. Co.**, 759 A.2d 942, 945 (Pa. Super. 2000) (*citing* **Penneys v. Pennsylvania R.R. Co.**, 183 A.2d 544, 546 (Pa. 1962)).

In its first issue, Ryvamat avers the trial court failed to comply with the Superior Court's remand order, to determine "whether and what length of delay before July 2014 was caused by KEM's assignors and whether it is equitable to award KEM interest for periods of its own delay[.]" Ryvamat's Brief at 14. In support, Ryvamat cites the trial court's comment, "[W]ho cares what went on between Endless Mountain and the Kemmerer [E]state[s] and whose fault [it was] that it took as long as it did?" **Id**. at 14 (*quoting* N.T., 1/16/25, at 13). Ryvamat maintains that the trial court mistakenly excused KEM's delay in bringing the instant suit where, as held by our Supreme Court in the prior appeal, "KEM's cause of action for an accounting accrued in 2008."[7] **Id**. at 15.

---

[7] We note the trial court included additional reasoning in its opinion that did not arise at oral argument — including the questions of: (1) whether KEM's assignors could have brought suit against a defendant before they determined who properly owned the one-half interest in the oil, gas, and mineral rights; and (2) whether KEM's assignors bore a duty to demand payment of the Lease Payment proceeds during that litigation. **See** Trial Court Opinion, 4/24/25, at 5-6. Ryvamat responded to these legal issues in its brief. **See** Ryvamat's Brief at 16-17.

*(Footnote Continued Next Page)*

In its second issue, Ryvamat claims "the purpose of prejudgment interest is to 'avoid injustice,'" but here, "KEM's assignors knew of the Lease payment in July 2008," but took "the strategic approach" to first litigate their claims against each other before filing suit in July 2014. Ryvamat's Brief at 18-19. In other words, Ryvamat claims, the KEM assignors chose to "tak[e] one case at a time." *Id*. at 20. Ryvamat reasons the trial court failed to "address[] this . . . tactical decision making," and instead, it erroneously awarded the interest based on Ryvamat merely having "beneficial use of the money that it subsequently was ordered to account to" KEM. *Id*. at 21. Ryvamat denies that it was "'unjustly enriched' merely because it was not compelled to account to KEM until" later. *Id*. at 22.

On the same foregoing reasons, in its third issue, Ryvamat asserts the trial court abused its discretion in shifting the burden of proof. Ryvamat maintains KEM bore the burden of proof to establish its entitlement to discretionary prejudgment interest. Ryvamat claims that "[r]ather than focusing on KEM's actions and how [it] contributed to the delay," the trial court improperly "accused Ryvamat of laying in wait and taking 'no action' while" the litigation between KEM's assignors continued. *Id*. at 23-24.

---

We limit our review, however, to the issues raised at oral argument before the trial court, as we conclude they are dispositive of this matter. *See Ford v. Oliver*, 176 A.3d 891, 905 (Pa. Super. 2017) (stating that we may affirm the trial court's decision on any basis).

In its opinion, the trial court again rejected Ryvamat's contention that it should not have to pay any prejudgment interest because "KEM's assignors allowed the litigation between them, of which Ryvamat was not a party, to drag on for six years." Trial Court Opinion, 4/24/25, at 5. The court reasoned:

> [W]hile Ryvamat blames KEM's assignors for the six years taken to resolve their dispute with each other and characterizes itself as the "victim" of such "delay," it overlooks the fact [that] the Deer Park [quiet title action], which was necessitated because Deer Park failed to provide proper service and notice of it, not because of anything either of KEM's assignors did, was not dismissed until May 2015[. Ryvamat] has pointed to no evidence in the record of delay caused by KEM's assignors or its own victimization.
>
> The record does not reflect all of the pleadings or other matters that were filed or when in the Deer Park [quiet title action] the litigation between KEM's assignors, what hearings were held and when, when the court made its decisions and whether there were any other circumstances, such as court scheduling, that might explain the time it took to litigate those matters. However, the record does indicate the administrator of the Kemmerer Estates identified and negotiated with the Kemmerer heirs, of whom there were 30 who were located all over the country in January 2010. N.T., 6/23/20, [at 256], and the court found KEM's assignors "vigorously litigated" against each other.
>
> Litigation can be time-consuming. Ryvamat points only to the passage of time to prove delay; it has not pointed to any lack of diligence, bad faith, dilatory conduct or delay caused by KEM or its assignors. The fact that the litigation took six years is not, of itself, proof that any party caused "delay."

*Id*. at 6.

Furthermore, the trial court found that Ryvamat's argument, that it should not be "penalize[d]" for KEM's assignors' failure to bring suit earlier, "misse[d] the mark." *Id*. at 8 (*citing* Ryvamat's Proposed Findings of Fact and Conclusions of Law, 12/9/24, at 16). The court reasoned:

> The award of prejudgment interest in a non-contract case is not a matter of punishment. It is a matter of equity between the parties, of restitution, of what is fair under the circumstances. It is to avoid injustice, such as when one party had the use and benefit of money that rightfully was due and owing to another party.

*Id*. (citations omitted).

After review, we determine the trial court did not abuse its discretion in awarding KEM prejudgment interest for the entire period between July 21, 2008, when Ryvamat received the Lease Payment, and July 18, 2014, when KEM's assignors commenced the instant suit. *See Linde*, 220 A.3d at 1150. We reiterate that on appeal, Ryvamat bears "a heavy burden" to show more than an error of judgment, but must establish "an actual abuse of the [trial court's] discretionary power." *Id*. Contrary to Ryvamat's insistence that the trial court failed to consider "whether and what length of delay before July 2014 was caused by KEM's assignors and whether it is equitable to award KEM interest for periods of its own delay," we determine the trial court did consider these questions. The court explained it could not "assess," on a cold reading of the prior record, whether either Endless Mountain or the Kemmerer Estates caused undue delay in their years-long litigation. N.T., 1/16/25, at 22. In its opinion, the court further considered that the prior litigation may have included factors, such as court scheduling, that prolonged the matter. *See* Trial Court Opinion, 4/24/25, at 6.

In any event, on appeal, Ryvamat does not challenge the court's reasoning that it has pointed "only to the passage of time to prove delay,"

- 12 -

without any evidence of "lack of diligence, bad faith, [or] dilatory conduct." *Id*. We reiterate that after remand by the prior Superior Court panel, the trial court heard oral argument only, based on the record already made. It does not appear that either party sought to reopen the record to supplement any evidence on the issue remanded. *See* Trial Court Opinion, 4/24/25, at 4.

Meanwhile, the trial court emphasized that the award of any prejudgment interest would be based in equity and fairness, and not penalization. *See* N.T., 1/16/25, at 14, 25; *see also* Trial Court Opinion, 4/24/25, at 8. The court found that neither the KEM assignors nor Ryvamat committed any wrongdoing in, respectively, litigating their title issues or receiving and holding the entire Lease Payment. Instead, the court based its decision on the fact that Ryvamat possessed, for this entire period, all of the Lease Payment, as well as the use and benefit of it, while another party — now determined to be KEM — owned a one-half interest of it. We determine the trial court's conclusion comports with our law, cited above:

> [A]lthough it may appear unreasonable to require appellant to pay interest for a long period when it had no control over the litigation, it appears equally unreasonable to deprive appellees of the fruit of the use of their money during a period when they also had no control over the course of the litigation.

*Schiller*, 759 A.2d at 945.

Finally, we point out that with respect to Deer Park's quiet title action, its default judgment was not vacated until September 2014, and the complaint

- 13 -

was not dismissed with prejudice until May 2015.[8]  In other words, until September 2014, Deer Park, and subsequently its successor, Ryvamat, had a default judgment that it was the sole owner of the oil, gas, and minerals on the properties.

For the foregoing reasons, we determine the trial court did consider the issues on remand: "whether and what length of the delay before July 2014 was caused by KEM's assignors and whether it is equitable to award KEM interest for periods of its own delay."  **KEM I**, 283 A.3d 362 (unpublished memorandum at 21-22).  The court found KEM's assignors did not create a delay for any period such that prejudgment interest would be improper. Additionally, the trial court properly considered the issue of fairness. Accordingly, we do not disturb its order granting KEM prejudgment interest for the entire period between July 21, 2008 and July 18, 2014.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2025

---

[8] As stated above, Deer Park had filed the quiet title action in 2007.

- 14 -