Lisa M. MORGAN, Trustee, on behalf of the Marital Trust of Robert M. Mumma, Appellant

v.

PETROLEUM PRODUCTS EQUIP-MENT COMPANY, Carlos R. Leffler, Inc., and McClure Company, T/A McClure Mechanical Services, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 26, 2014.

Filed May 13, 2014.

Andrew L. Swope, Harrisburg, for appellant.

Adam L. Seiferth, Lemoyne, for McClure Company, appellee.

BEFORE: GANTMAN, P.J., DONOHUE, and STABILE, JJ.

OPINION BY STABILE, J.:

Appellant/plaintiff Lisa M. Morgan, Trustee, on behalf of the Marital Trust of Robert M. Mumma, appeals from an order of the Court of Common Pleas of Cumberland County (trial court), which granted summary judgment in favor of Appellee/defendant McClure Company, T/A McClure Mechanical Services (McClure). We affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

As recounted by the trial court in its 2004 opinion relating to its grant of summary judgment in favor of McClure:

[Appellant] own[s] real estate located at 1041 Mumma Road, Wormleysburg, Cumberland County, Pennsylvania. A commercial complex known as Pennsboro Center is located on this property. [Appellant] allege[s] that fuel oil for the boilers was provided by an underground storage tank and associated underground product lines. On ... March 1, 1990, [Appellant] contacted [McClure] regarding an odor of fuel oil in the base of an elevator shaft at Pennsboro Center.

On March 1, 1990, McClure sent an employee to Pennsboro Center ... to assess the problem. McClure's employee discovered fuel oil in the elevator shaft, and on March 16, 1990, began work on a leak found in the underground product lines in the parking lot. On March 27, 1990, McClure replaced the underground product lines. The new underground product lines were reconnected to the existing product lines at a point before they entered the building. [Appellant] allege[s] McClure did not perform a pressure tightness test on the underground product lines. [Appellant] also allege[s] that McClure reported that it had repaired the underground product lines and certified that the un-

derground storage tank was tight and not leaking. It is undisputed that McClure performed no other work for [Appellant] after March 27, 1990, which relates to, or is part of this action.

In October 1990, the Pennsylvania Department of Environmental Resources (hereinafter "PaDER") [now Department of Environmental Protection] discovered fuel oil in the storm water culvert located underneath Mumma Road. [Appellants] retained Petroleum Products Equipment Company (hereinafter "Petroleum Products") to perform a series of tightness tests of the underground storage tank and the underground product lines. These tests revealed a leak in the underground storage tank system. Thereafter, Petroleum Products performed repair work on the storage tank and/or product lines.

In March 1991, Petroleum Products completed the installation of a new underground storage tank. An examination of the removed underground storage tank revealed that there was no leak. An examination of the tank pit after removal of the storage tank did not reveal petroleum hydrocarbon contamination.

On ... March 27, 1991, PaDER discovered fuel oil was entering the storm water culvert in the vicinity of the Pennsboro Center. In 1992, PaDER contacted [Appellant] to perform a site assessment at Pennsboro Center. As a result, [Appellant] retained Tethys Consultants, Inc. ... to perform the tightness test on the underground storage

tank and product lines at Pennsboro Center. On July 6, 1992, Tethys proceeded to excavate the product lines. Numerous perforations in the supply and return lines were discovered at the point where the product lines entered the building.

. . . .

[Appellant] commenced this action on October 14, 1994 by filing a [p]raecipe for [w]rit of [s]ummons against [defendants] Petroleum Products and Carlos R. Leffler, Inc. On May 11, 1995, [Appellant] added [McClure] as a defendant by filing a [p]raecipe for [w]rit of [s]ummons. [Thereafter, Appellant] filed a complaint against all of the defendants in the suit. After preliminary objections were disposed of, [Appellant] filed [its] [f]irst [a]mended [c]omplaint.[1] McClure filed its [a]nswer and [n]ew [m]atter in he [n]ature of a [c]rossclaim against Petroleum and Leffler.[2]

On November 16, 2000, McClure filed its initial [m]otion for [s]ummary [j]udgment. [The trial court] denied McClure's [m]otion[,] because the facts were 'unclear' with regard to when [Appellant] should have discovered the alleged injury.

Following the denial of summary judgment, the parties performed additional discovery. On January 28, 2003, the defendants [deposed Appellant's representative] Lisa M. Morgan. Because of the admissions of Ms. Morgan in her deposition, McClure filed its [r]enewed

1. Appellant raised in its amended complaint against McClure causes of action for breach of contract, negligence, and noncompliance with and violation of the Pennsylvania Storage Tank and Spill Prevention Act (STSPA), Act of July 6, 1989, P.L. 169, 35 P.S. § 6021.1310, in connection with an oil leak at a property owned by Appellant.

2. Our review of the record reveals that the trial court did not address McClure's cross-claims against defendants Petroleum Products and Carlos R. Leffler. Specifically, McClure's cross-claims asserted indemnification from the other defendants (and liability over) in the event McClure were to be held liable to Appellant.

[m]otion for [s]ummary [j]udgment on January 1, 2004, asserting that all of [Appellant's] claims against McClure are barred by the statute of limitations.

Trial Court Opinion, 6/30/04, at 1–4. On June 30, 2004, the trial court granted McClure's renewed motion for summary judgment against Appellant.[3] In so doing, it concluded:

> Ms. Morgan's deposition testimony clearly establishes that [Appellant] discovered the existence of a cause of action against McClure not later than July 6, 1992. In light of this new evidence, the statute of limitations bars the present claims for negligence, which was not filed by [Appellant] until May 11, 1995. By the same token, [Appellant's] cause of action under the STSPA is also barred by the statute of limitations. Furthermore, the breach of contract claim is also time barred because [Appellant] discovered the claim within the four-year statute of limitations, which began from possible date of breach of contract, but [Appellant] did not file the claim until the period ended.[FN]

**3.** On September 12, 2006, the trial court dismissed defendants Petroleum Products and Carlos R. Leffler's cross-claims against McClure, concluding, *inter alia*, that Appellant had no tort claims remaining against any of the defendants.

**4.** The trial court did not direct Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Also, the trial court did not issue an opinion under Pa.R.A.P. 1925(a).

**5.** It is well-settled that
[o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

[FN] The latest possible date of a breach of contract is March 27, 1990, which is the last day McClure worked for [Appellant].

*Id.* at 11–12. On June 14, 2013, Appellant filed a praecipe to discontinue the suit with prejudice as to defendants Petroleum Products and Carlos R. Leffler under Pa. R.C.P.No. 229. Following its filing of the praecipe to discontinue, Appellant filed this appeal from the trial court's June 30, 2004, order granting summary judgment in favor of McClure.[4]

On appeal,[5] Appellant raises four issues for our review. First, it argues that the trial court erred in reconsidering its prior ruling that denied McClure's initial summary judgment motion.[6] Second, Appellant argues that the trial court erred in granting McClure's renewed summary judgment motion because, in so doing, it invaded the province of a jury by weighing material facts to determine the date by which Appellant should have discovered its cause of action against McClure. Third, Appellant argues that the trial court erred in failing to give Appellant the full benefit of the four-year limitations period on its breach of contract claim against McClure. Finally, Appellant argues that the trial court erred in applying a two-year limita-

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment. *Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa.Super.2013) (quoting *Cassel–Hess v. Hoffer*, 44 A.3d 80, 84–85 (Pa.Super.2012)).

**6.** Appellant does not challenge on appeal the trial court's grant of summary judgment on its negligence claim against McClure.

tions period to its STSPA claim.[7]

We first address Appellant's argument that the trial court erred in granting McClure's renewed summary judgment motion, because it previously had denied an identical motion that was predicated on substantially the same facts and legal theories. Specifically, Appellant argues that the trial court's grant of McClure's renewed motion for summary judgment conflicted with the law of the case doctrine. We disagree.

■ As our Supreme Court explained in *Ario v. Reliance Ins. Co.*, 602 Pa. 490, 980 A.2d 588 (2009):

> The law of the case doctrine [sets forth various rules that] embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.

*Id.* at 597 (citing *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). A trial judge, however, always may revisit his or her own prior pre-trial rulings in a case without clashing with the law of the case doctrine. *See In re Estate of Elkins*, 32 A.3d 768, 777 (Pa.Super.2011) (citation omitted), *appeal denied*, 618 Pa. 688, 57 A.3d 71 (2012); *see also BuyFigure.com,*

*Inc. v. Autotrader.com, Inc.*, 76 A.3d 554, 558–59 (Pa.Super.2013) (noting that "[a] trial court has the inherent power to reconsider its own rulings"), *appeal denied,* —— Pa. ——, 84 A.3d 1061 (2014).

■ Here, based on our review of the entire record, we conclude that the trial court's grant of McClure's renewed motion for summary judgment did not implicate the law of the case doctrine. In particular, the *same* trial court judge, the late President Judge George E. Hoffer, ruled on both summary judgment motions filed by McClure. Because the law of the case doctrine does not prohibit the same trial court judge from revisiting his prior rulings, we conclude that the trial court in this case did not err in granting McClure's renewed motion for summary judgment on this ground.

We next address Appellant's argument that the trial court erred in granting McClure's renewed motion for summary judgment on its causes of action for breach of contract and under the STSPA, because there was a genuine issue of material fact as to when Appellant discovered the existence of a cause of action against McClure. Specifically, Appellant argues that, contrary to the trial court's opinion, the alleged date by which Appellant discovered

---

7. McClure filed with this Court a motion to quash this appeal. In its motion, McClure argues that we lack jurisdiction to entertain this appeal, because Appellant did not appeal from a final order. In support of its argument, McClure points out that Appellant failed to comply with Pa.R.C.P.No. 229(b)(1) in that Appellant neither sought McClure's permission nor petitioned the trial court to discontinue the case against the other defendants. McClure, therefore, argues that Appellant's discontinuance was defective and did not render the June 30, 2004, summary judgment order final. Although Appellant did not properly secure the discontinuance against the other defendants, we disagree with McClure's contention that we lack jurisdiction

in this case. Appellant only discontinued this action against the other defendants and, as a result, we continue to have jurisdiction over the subject matter and the remaining parties in this case. To the extent McClure was prejudiced or adversely affected by the discontinuance, it was incumbent upon McClure to move to strike Appellant's praecipe to discontinue in the trial court in accordance with Rule 229(c), which provides that "[t]he court, upon petition and after notice, may strike off a discontinuance in order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice." Pa.R.C.P.No. 229(c). Accordingly, we deny McClure's motion to quash.

a cause of action against McClure—*i.e.,* July 6, 1992—was subject to dispute because she was unaware on or by that date that she had a cause of action against McClure. As a result, Appellant argues the trial court invaded the province of the jury, which is charged with weighing facts and determining credibility. We disagree.

■■■■■ To begin, it is well-settled that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises.[8] *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983). Thus, once a cause of action has accrued and the prescribed statutory period has run, an injured party is prohibited from bringing his or her cause of action. *Id.* There are, however, exceptions to this general rule which act to toll the running of the statute. One of these exceptions is the discovery rule, which we have described as a " 'judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct.' " [9] *Coleman v. Wyeth Pharm., Inc.,* 6 A.3d 502, 510 (Pa.Super.2010) (citation omitted), *appeal denied,* 611 Pa. 638, 24 A.3d 361 (2011). The discovery rule in Pennsylvania applies to all causes of action, including breach of contract. *See Sadtler v. Jackson–Cross Co.,* 402 Pa.Super. 492, 587 A.2d 727, 731 (1991).

■■■■ As our Supreme Court aptly explained in *Fine:*

As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause. We have clarified that in this context, reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised. As we have stated: There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence. Put another way, the question in any given case is not, what did the plaintiff know of the injury done him? But, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him? While reasonable diligence is an objective test, it is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question. Under this test, a party's actions are evaluated to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection

---

8. Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the limitations period. *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473, 475 (1964).

9. The purpose of the discovery rule is to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he or she has been injured, so that he or she essentially has the same rights as those who have suffered such an injury. *Hayward v. Med. Ctr. of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1043 (1992), *abrogated on other grounds, Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850 (2005).

of their own interest and the interest of others.

Therefore, when a court is presented with the assertion of the discovery rule[']s application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.

*Fine,* 870 A.2d at 858–59 (internal quotation marks and citations omitted). Indeed, "[t]he standard of reasonable diligence is *objective,* not subjective. It is not a standard of reasonable diligence unique to a particular plaintiff, but instead, a standard of reasonable diligence as applied to a 'reasonable person.'" *Dalrymple v. Brown,* 549 Pa. 217, 701 A.2d 164, 167 (1997) (emphasis added). Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law. *See Colonna v. Rice,* 445 Pa.Super. 1, 664 A.2d 979, 980–81 (1995) (citation omitted), *appeal denied,* 544 Pa. 599, 674 A.2d 1065 (1996).

■ Here, we disagree with Appellant's contention that the trial court's determination that Appellant "discovered the existence of a cause of action against McClure not later than July 6, 1992" was inappropriate at the summary judgment stage because it involved the resolution of a fact-intensive inquiry. Trial Court Opinion, 6/30/04, at 11. The trial court's determination that Appellant discovered a cause of action against McClure by July 6, 1992 is predicated wholly on undisputed, uncontradicted evidence. Specifically, the record contains, *inter alia,* Ms. Morgan's January 18, 2003, deposition testimony that supports the trial court's conclusion. In describing the work that McClure performed on March 27, 1990, Ms. Morgan testified:

> The only thing I remember is that I knew that [McClure was] replacing, I thought, *the whole length of pipe, because I got an oral estimate as to how much it was going to be and it was a lot of pipe.* And when the bill came through, I saw on there, [r]eplaced the pipes from the tank to the building, which is what I thought they were doing. It was old pipe, and I think the thought was to just replace the whole thing even though the leak or the holes were predominantly in one section, to replace the whole thing because it was old pipe. *And I recall some conversation about not wanting to have a lot of, you know, joints, so just replace the whole thing.*

N.T. Deposition, 1/28/03, at 71–72 (emphasis added). She also testified about what she had observed on July 6, 1992, when product lines tied to the underground storage tank were excavated. Ms. Morgan testified:

> Q. Is there anything else with regard to McClure?
>
> A. No. My complaint against McClure is that they messed up. They didn't replace—they missed the leak that was the ultimate leak that caused this problem. And because it went on for, I don't know, it was probably two years, it took a problem that was small and it ended up being a very big problem because two years elapsed until the pipes were redug up and it was seen that there was a section that hadn't been replaced.

Q. With regard to that section that wasn't replaced, we're going to jump ahead, because now is a good time to talk about it. Can you estimate the length of the pipe or pipes that was not replaced?

A. I'm going to say maybe two feet, somewhere around there. Maybe a little smaller.

. . . .

Q. Was that pipe still in the ground when you observed it?

A. Yes.

Q. And all the connections were still— was it still connected, or had they cut it off?

A. No, I think it was connected.

Q. *And when you looked into the hole, you could see problems?*

A. *Yes.* I was standing there, [Pa]DER was on site, and basically we were hovering over the hole at this point, Cal Kirby, myself, I don't remember who all else was out there. . . . And I just remember we were standing there and they were digging in the hole, and they uncovered that section of the pipe and all of us going essentially, Oh, my God; there it is.

Q. You said that you recall one pipe being really bad. Can you physically describe what you mean by that? What did you observe?

A. *It was rusted as all—highly rusted with holes, multiple holes in the pipe, some big as a nickel.*

Q. Was there more than one hole the size of a nickel?

A. I think so.

. . . .

Q. *Did you believe that the condition that you observed at the second excavation was the condition of this pipe at the time McClure did its work with regard to the first excavation?*

A. *Yes.*

Q. *Is that something that when you looked at the pipe, that's what you thought at that point in time?*

A. *Yes. Reason being, in my opinion, there's no way a pipe could have gotten in that condition in that period of time. And I remember thinking to myself, What an idiot? If the pipe that they took out of the ground looked like this, why in the world would [McClure] have stopped?*

. . . .

Q. So as of the time of the second excavation, you had a recollection with regard to the work McClure-that you thought McClure was supposed to do?

A. Yes.

Q. And that when you saw that approximate two foot of pipe, you understood at that point that that was at odds with the work that you thought McClure was going to perform?

A. Yes. I remember thinking to myself, What idiot made the decision to stop there?

*Id.* at 81–84, 87 (emphasis added). Based on the record evidence, we conclude that the trial court did not err in determining as a matter of law that, as of July 6, 1992, Appellant possessed the salient facts which serve as the basis of the instant causes of action against McClure. Ms. Morgan's deposition testimony unerringly indicates that, as of July 6, 1992, (1) Appellant knew that McClure was supposed to replace all the pipes, (2) McClure did not replace all the pipes, and (3) the excavated pipes were rusted with holes.

To the extent Appellant relies on Ms. Morgan's November 29, 2000 affidavit to argue that it did not know until pre-complaint discovery that McClure's work was

defective, we reject this argument.[10] Our review of the record reveals that the affidavit adds nothing more to what Ms. Morgan testified to during her 2003 deposition. As we have explained above, the discovery rule's standard of reasonable diligence is an objective standard and, based on that standard, and given the uncontradicted evidence, the trial court properly concluded that a reasonable person in Appellant's shoes would have discovered causes of action against McClure as of July 6, 1992. Accordingly, the trial court did not err in concluding that Appellant's causes of action against McClure accrued by July 6, 1992.[11]

Appellant next argues that the trial court erred to the extent it denied Appellant the benefit of the full four-year statute of limitations on its breach of contract claim against McClure once discovery of its cause of action accrued. McClure concedes this point and we agree. *See* Appellee's Brief at 31. In declining to apply the discovery rule to toll and extend the statute of limitations on Appellant's breach of contract claim, the trial court reasoned that because "[Appellant] discovered the claim within the four-year statute of limitations, which began [on March 27, 1990], but [it] did not file the claim until the period ended," *i.e.*, May 11, 1995, Appellant's claim was time-barred. Trial Court Opinion, 6/30/04, at 12.

As both parties point out, our Supreme Court addressed this issue after the trial court had ruled on McClure's motion for summary judgment in this case. Specifically, in *Fine* our Supreme Court held:

When the discovery rule applies, the statute of limitations does not commence to run at the instant that the right to institute suit arises, *i.e.*, when the injury occurs. Rather, the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct.

. . . .

[I]t is not relevant to the discovery rule['s] application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises.

870 A.2d at 859. Accordingly, we conclude that the trial court erred in declining to toll the limitations period on Appellant's contract claim against McClure. As a result, the trial court erred in granting summary judgment on this claim.

Appellant finally argues that the trial court erred in applying a two-year limitations period to its private cause of action against McClure under the STSPA.[12] Specifically, Appellant argues that al-

10. Ms. Morgan stated in her November 29, 2000, affidavit:

Prior to the completion of pre-complaint discovery in this matter, [Appellant] *did not know, nor did it have reason to know that the work performed by McClure . . . was in any way defective.* As a result of the pre-complaint discovery process, *I learned for the first time that McClure had not performed the work* [Appellant] contracted for and that McClure represented that it had performed.

Morgan's Affidavit, 11/29/00, at ¶ 26 (emphasis added).

11. On appeal there is no suggestion that Appellant should have discovered causes of action against McClure prior to this date.

12. In its complaint against McClure, Appellant sought to recover under the STSPA, *inter alia*, "the diminution of the value of the Pennsboro Center caused by the release of the fuel oil." Complaint, 3/20/96 at ¶¶ 85–89.

though no Pennsylvania appellate court has ruled on this issue, there appears to be some consensus among a growing number of Pennsylvania trial and district courts that the limitations period for a private cause of action under STSPA is greater than two years—*i.e.,* either six or twenty years. *See* Appellant's Brief at 20. We agree with Appellant's characterization of the current jurisprudence on this issue. Nonetheless, for the reasons that follow, we do not have to resolve the issue of what the limitations period is for private STSPA claims in the matter *sub judice.*

As indicated above, courts that have addressed the limitations period for private STSPA claims have displayed near unanimity in their determination that a two-year statute of limitations is inapplicable to such claims. In discussing this issue, we find persuasive the reasoning and analysis of the United States District Court for the Middle District of Pennsylvania in *Metso Paper USA, Inc. v. Bostik, Inc.,* No. 3:08–CV–772, 2011 WL 2670320, at *1 (M.D.Pa. July 8, 2011). Specifically, the district court explained:

> Every Pennsylvania court determining the statute of limitations for a [STSPA] citizen suit has determined that the limitations period is longer than two years. *See Mistick PBT v. Liss,* 57 Pa. D. & C.4th 233, 240 (Pa.Com.Pl. 2002) (applying six-year statute of limitations for Tank Act citizen suits); *Ziegler v. Lynn,* 33 Pa. D. & C.4th 143, 165 (Pa.Com.Pl.1996) (twenty-year statute of limitations); *Buttzville Corp. v. Gulf Oil Corp.,* 25 Pa. D. & C.4th 172, 176 (Pa. Com.Pl.1995) (twenty-year statute of limitations). In *Mistick PBT v. Liss,* the Allegheny County Court of Common Pleas determined that [STSPA] claims are not necessarily torts. 57 Pa. D. & C.4th at 240. In some [STSPA] cases, the *Mistick* court pointed out, a proper-

ty owner has sued a remote prior owner for the diminution in value to the property resulting from the prior owner's violation of the [STSPA]. *Id.* at 237–40 (citing *Juanita [Juniata] Valley Bank v. Martin Oil Co.,* 736 A.2d 650 (Pa.Super.1999)). Prior owners do not owe duties to future owners to prevent a diminution in value, *id.* at 240, and therefore this would be a valid [STSPA] claim that is not in essence a tort, *id.* at 243. Therefore, the *Mistick* court applied Pennsylvania's six-year "catchall" limitations period. *Id.* at 240 (citing 42 Pa.C.S. § 5527). In *Buttzville Corp. v. Gulf Oil Corp.,* the Lancaster County Court of Common Pleas applied the twenty-year limitations period from section 1314 of the [STSPA] to citizen suits. 25 Pa. D. & C.4th at 176. The *Buttzville* court stressed that the [STSPA] was a remedial statute, and the General Assembly intended for it to be " 'liberally construed in order to fully protect the public health, welfare and safety of the residents of this Commonwealth.' " *Id.* (quoting 35 P.S. § 6021.109).

In addition to the Pennsylvania cases rejecting the two-year statute of limitations, two federal cases have followed the same approach. *See United States v. Sunoco, Inc.,* 644 F.Supp.2d 566, 580–81 (E.D.Pa.2009); *FSA Group, Inc. v. Amerada Hess Corp.,* No. 05–809, 2007 WL 1866767, at *10 (E.D.Pa. Jun[e] 28, 2007). The Eastern District of Pennsylvania offered an exceedingly thorough analysis of the appropriate statute of limitations for a [STSPA] citizen suit in *FSA Group, Inc. v. Amerada Hess Corp.* [,] 2007 WL 1866767 at *3–10. The *FSA Group* court noted that the Pennsylvania Supreme Court "unequivocally determined that 'a private action brought under the STSPA is no different than one brought by the Commonwealth.' " *Id.* at *10 (quoting *Centolanza [v. Lehigh Val-*

*ley Dairies, Inc.*], 540 Pa. 398, 658 A.2d 336, 341 (Pa.1995)). Based on this and the reasons outlined in *Mistick* and *Buttzville,* the court held that a twenty-year statute of limitations applies.

*Metso Paper USA, Inc.,* 2011 WL 2670320 at *5–6. Having concluded that a two-year statute of limitations did not apply, the court in *Metso* declined to determine whether the six- or twenty-year statute of limitations was appropriate because the plaintiff's complaint would have been timely under either limitations period. *Id.* at *6. We agree and do the same here.

Thus, similar to *Metso,* we need not determine instantly what the appropriate limitations period is for a private STSPA claim. Like the plaintiff's STSPA claims in *Metso,* Appellant's STSPA claims against McClure would be timely under either a six- or twenty-year limitations period. As noted above, Appellant's causes of action against McClure accrued as of July 6, 1992 and Appellant instituted its cause of action against McClure on May 11, 1995—well within either limitations period. Accordingly, we conclude that the trial court erred in granting summary judgment in favor of McClure on the basis that a two-year limitations period applied to Appellant's STSPA claims.

Affirmed in part. Reversed in part. Motion to quash denied. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.