J-A30042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AUSTIN JAMES ASSOCIATES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEROY MUSSER AND MARY MUSSER | : | No. 332 MDA 2019 |
| AND LEE-MAR, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| MANKO, GOLD, KATCHER & FOX, LLP | : | |

Appeal from the Order Entered January 24, 2019
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-14-04918

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                **FILED JANUARY 14, 2020**

This is an appeal from an order of the Court of Common Pleas of Lancaster County granting summary judgment for the defendants and additional defendant in an unjust enrichment action brought by Austin James Associates, Inc. (Consultant) on the ground that the its claims are barred by the statute of limitations.  For the reasons set forth below, we affirm.

This action arises out of a 2003 environmental remediation contract (the Contract) between Consultant, which is an environmental consulting and

_____

* Retired Senior Judge assigned to the Superior Court.

remediation company, and defendants Leroy Musser, Mary Musser and Lee-Mar, Inc. (collectively, Musser) to remediate soil and groundwater contamination on and from a property at 2965 Lebanon Road, Manheim, Pennsylvania (the Property). The Property was purchased by Musser in 1984 and contained a retail gas station, restaurant, and convenience store. Complaint ¶3 & Musser Answer ¶3.

On the Property, there were three unleaded gasoline underground storage tanks and one diesel fuel underground storage tank that were covered by the Storage Tank and Spill Prevention Act (the Storage Tank Act), 35 P.S. §§ 6021.101-6021.2104. Complaint ¶5 & Musser Answer ¶5. The Storage Tank Act created the Pennsylvania Underground Storage Tank Indemnification Fund (USTIF) for "the purpose of making payments to owners, operators and certified tank installers of underground storage tanks who incur liability for taking corrective action or for bodily injury or property damage caused by a sudden or nonsudden release from underground storage tanks." 35 P.S. § 6021.704(a). At the time of the USTIF claims at issue here, the Storage Tank Act limited USTIF payments to owners to a total of $1 million per tank per occurrence. 35 P.S. § 6021.704(b) (in effect 1989 to December 12, 2001).

In 1997, Musser notified USTIF of a release of unleaded gasoline from lines associated with one of the tanks and USTIF accepted the claim and deemed it eligible for remediation funding of up to $1 million. Complaint ¶6 & Musser Answer ¶6. In 1997, Musser hired Alternative Environmental

Solutions, Inc. (AES) to remediate the contamination. Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶20. In 1999, AES removed two of the unleaded gasoline tanks, the diesel tank, a tank that had stored used motor oil, and two leaded gasoline tanks not covered by the Storage Tank Act and submitted an Underground Storage Tank Closure Report (the Closure Report) to PADEP documenting the tank removals. Closure Report at 1-3; Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶¶21-22. At that time, AES reported additional releases on the Property to USTIF. Herman Dep. at 37. USTIF subsequently accepted two additional claims for a total of $3 million in payment eligibility, but included the additional claims within the 1997 claim number. Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶26; Herman Dep. at 37-38.

> The Closure Report stated with respect to the diesel tank:
>
> Possible contaminated soil was detected in the soil beneath the dispenser. Analytical results of a sample (S-2) obtained directly beneath the dispenser at 2-feet below grade showed benzene, toluene, and naphthalene above the state standards. However, results of a second sample (diesel dispenser) collected at 3-feet below grade indicated concentrations were within the state standards for all parameters. **Although a hole was discovered in this tank, a characterization sample was not taken beneath the tank due to the extensive gasoline contamination present beneath the tank and planned site mediation**.

Closure Report at 14 (emphasis added). The Closure Report also stated:

> Approximately 1,200 tons of presumed gasoline-impacted soil was excavated from beneath the gasoline UST systems. A majority of

- 3 -

this soil was excavated from beneath the piping runs that extended from the USTs to the dispensers; and, from areas surrounding the dispensers themselves. The gasoline-impacted soil was stockpiled on-site and stored on and covered with 6-mil plastic sheeting. **Approximately 17-tons of presumed diesel-impacted soil was excavated from beneath the 8,000 gallon diesel UST and stockpiled separately on and beneath 6-mil plastic sheeting.** Analytical results of a confirmatory sample of the presumed diesel-impacted stockpile indicated that the soil is within PADEP standards for on-site re-use. … The diesel fuel and waste oil stockpiled soil piles were graded out on-site as part of a fill area, which is being constructed for additional parking to the north of the convenience store.

*Id.* at 4-5 (emphasis added).

By 2002, AES had spent half of the $3 million in USTIF funds, but was not successfully remediating the contamination. Herman Dep. at 74; Complaint ¶14 & Musser Answer ¶14. Musser's attorneys, Manko, Gold, Katcher & Fox, LLP (Law Firm), contacted Consultant and asked Consultant to evaluate the contamination and propose an effective remediation system. Complaint ¶15 & Musser Answer ¶15; Herman Dep. at 5-7, 13.

In October 2003, Consultant and Musser entered into the Contract. The Contract provided that Consultant would remediate the soil and groundwater contamination from the Property for a fixed price of $1,208,176.52, which it defined as the "Total Cost." Contract ¶4.1. This price was based on the remaining amount of USTIF funds; Consultant estimated a cost of $1.42 million to $1.79 million, but Musser was unwilling to pay more than the remaining available USTIF funds and Consultant agreed to the fixed price in exchange for most of the payments being made up front. 7/02 Consultant

Proposal at 6-9; 7/8/02 Consultant Letter at 1; Herman Dep. at 143-50; Contract ¶¶4.3-4.6 & Payment Schedule. The Contract further provided that Consultant agreed that it would bear any remediation costs above $1,208,176.52 except to the extent such costs were covered by cleanup cost cap insurance that Consultant obtained and that "in no event shall Consultant fail to complete the Remediation on the grounds that the costs thereof may or shall exceed, or have exceeded, the Total Cost, and in no event shall Musser bear costs in excess of the Total Cost for completion of the Remediation described herein." Contract ¶4.2.

The Contract defined the contamination to be remediated as "the release of approximately 3,600 to 6,300 gallons of regular unleaded gasoline at the Property from August 1996 through January 1997, which resulted in contamination of soil and groundwater at the Project Site [defined as the Property and other properties contaminated by that release], as described more fully in the Remedial Action Plan." Contract ¶1.10. The Contract, however, also required Consultant "to perform the Remediation of the Project Site in accordance with the Remedial Action Plan or as otherwise required by PADEP in order and to obtain a letter(s) from PADEP evidencing approval of an Act 2 Final Report(s) or Remedial Action Completion Report for the Project Site." *Id.* ¶2.2. The Remedial Action Plan that Consultant submitted to PADEP in July 2003 before the Contract was signed and that PADEP approved described the contamination to be remediated as "[a]pproximately 44,000 lbs

of gasoline hydrocarbons … estimated to remain in the subsurface from several losses occurring in the mid to late 1990s estimated to total approximately 88,000 lbs." Remedial Action Plan ¶2.7. Consultant believed at the time that it entered into the Contract that the amount of the gasoline release that it was remediating was "a lot more" than 3,600 to 6,300 gallons. Herman Dep. at 225, 230-32, 312.

Consultant had the first five-page section of the Closure Report at the time that it entered into the Contract, but did not receive other the sections, pages 6-26 of the Closure Report, or its appendices. Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶33; Herman Dep. at 75, 80. Although it was aware that other sections and appendices would exist, Consultant did not request the full Closure Report or review PADEP's publicly available file, which contained the full Closure Report, before entering into the Contract. Herman Dep. at 85, 89, 92-95, 154-60, 167-68, 399. Consultant admitted that if it had reviewed the full Closure Report, it would have known that there had been additional releases in 1999 and the contamination included diesel fuel. Herman Dep. at 86, 164, 168-70.

Consultant successfully performed the remediation and was paid the full amount under the Contract. Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶71; Plaintiff's Answer to Additional Defendant's Interrogatory No. 23; Herman Dep. at 314. The remediation, however, took much longer than Consultant had estimated and cost

Consultant much more than the Contract price. At the time that it entered into the Contract, Consultant estimated that the active remediation of the contamination would be completed within 18 months to 2 years and that all work under the Contract, including testing for 2 years to confirm the successful remediation and obtaining PADEP final approval, would be completed within $4^{1}/_{2}$ years. 7/8/02 Consultant Letter at 1; Remedial Action Plan ¶4.2; Herman Dep. at 300-01. Consultant began its active remediation in 2004. Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶57; Herman Dep. at 290, 301. The remediation and submission to PADEP were not completed until 2015. Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶71.

As early as 2006 and 2007, Consultant believed that the contamination included more than regular unleaded gasoline because contamination was present and clean-up was still required after more than two years of active remediation. Herman Dep. at 299-302, 339-41, 345-46. By August 2008, Consultant's costs for the remediation exceeded the total amount that it could be paid under the Contract. 4/3/09 AIG Letter at 2.[1] In 2006 and 2007 or 2008, Consultant orally asked Musser, USTIF and PADEP whether there were

---

[1] Consultant had obtained cleanup cost cap insurance, as required under the Contract, and was paid some of its costs above the Contract price in a settlement with the insurer. Costs beyond the Contract price incurred in 2010-2015 and most of 2009 could not be recovered from the insurer, however, because the policy period had expired and cleanup cost cap insurance was not obtainable after 2008.

other releases on the Property and was told that they knew only of the release of unleaded gasoline and that USTIF's file was closed. Motion for Summary Judgment & Plaintiff's Answer to Motion for Summary Judgment ¶¶100-01; Herman Dep. at 301-03, 346-47. Consultant did not examine or seek to examine PADEP's file until May 2011. Herman Dep. at 347, 350. When it examined PADEP's file, Consultant concluded from the full Closure Report that there had been additional releases in 1999 and the contamination included diesel fuel. Complaint ¶¶35-36; Herman Dep. at 286-87, 350-51.

On May 27, 2014, Consultant filed this action against Musser seeking over $1.2 million for the additional costs of the remediation and alleging that these additional costs were caused by the fact that the contamination included diesel fuel, which had not been disclosed to Consultant. Complaint ¶¶35-40, 44, 49. Consultant's Complaint asserted a single cause of action for unjust enrichment based on the contention that the Musser received remediation beyond the clean-up of the 1997 release of regular unleaded gasoline that Consultant agreed to perform in the Contract. *Id.* ¶¶26-27, 45-49. Musser in its Answer denied that it was liable to Consultant and pleaded that Consultant's claim was barred by the statute of limitations. Musser Answer ¶¶44-49, 53. Musser also asserted a counter-claim against Consultant under the indemnity provision of the Contract and joined Law Firm as an additional defendant, asserting that Law Firm was liable to Musser for any award to Consultant and for Musser's attorney fees in the action. *Id.* ¶¶65-101. Law

Firm denied that it had breached any duties or obligations to Musser and also asserted that it was not liable to Musser because Consultant had no cause of action against Musser and because Consultant's claim against Musser was barred by the statute of limitations. Law Firm Answer ¶¶84-101, 114, 124, 128-31.

On June 4, 2018, following the close of discovery, Law Firm filed a motion for summary judgment seeking judgment in its favor on the ground that Musser had no claim for damages against it because Consultant's action against Musser was barred by the statute of limitations.[2] Consultant in response argued that its claim was not barred by the statute of limitations because the discovery rule applied and it did not have reason to know the cause of its injury until May 2011.

On July 30, 2018, the trial court granted summary judgment in favor of both Law Firm and Musser on the ground that Consultant's claim against Musser was barred by the statute of limitations. The trial court's order was not final because it did not dispose of Musser's indemnity counter-claim against Consultant. On January 22, 2019, the trial court issued an order,

_____

[2] Law Firm's motion also sought judgment in its favor on a number of additional grounds, including the grounds that Consultant had no cause of action against Musser because no cause of action for unjust enrichment exists where the parties' relationship is based on an express contract and that even if Musser were liable to Consultant, such liability was not caused by Law Firm. The trial court did not grant summary judgment on these other grounds or address any of these grounds in its opinion.

- 9 -

entered January 24, 2019, ruling that Musser had no cause of action against Consultant for indemnity, thereby rendering the summary judgment order final. Consultant filed a timely notice of appeal on February 21, 2019. Musser did not file any cross-appeal.

In this appeal, Consultant argues that the trial court erred in granting summary judgment on the statute of limitations because, viewing the evidence in the light most favorable to it, there were disputed issues of fact as to when it should have discovered the cause of its injury.[3]

Our standard of review of the trial court's grant of summary judgment is *de novo* and the scope of review is plenary. ***Pyeritz v. Commonwealth***, 32 A.3d 687, 692 (Pa. 2011); ***American Southern Insurance Co. v. Halbert***, 203 A.3d 223, 226 (Pa. Super. 2019). Summary judgment is properly granted where "there is no genuine issue of any material fact as to a

---

[3] Consultant lists this as three separate issues in its Statement of Questions. Appellant's Brief at 4. To the extent that Consultant is asserting that the trial court failed to view the evidence in the light most favorable to Consultant, such an argument does not present a separate issue in light of our *de novo* and plenary standard and scope of review. Musser and Law Firm have raised a number of additional issues in their briefs. Musser argues that if the trial court's summary judgment against Consultant is reversed, the judgment in Law Firm's favor and the judgment on its counter-claim against Consultant must also be reversed. Law Firm argues that the trial court's summary judgment order can also be affirmed on the other grounds raised in its summary judgment motion and that the summary judgment in its favor must stand even if the trial court is reversed because only Musser had a claim against it and Musser did not file any appeal or cross-appeal. Because we conclude that the trial court correctly granted summary judgment on the statute of limitations, we do not address these other issues.

necessary element of … [a] defense" and movant is entitled to judgment as a matter of law.  Pa.R.C.P. 1035.2(1).  Whether there are genuine issues of material fact presents a question of law.  ***American Southern Insurance Co.***, 203 A.3d at 226.   In reviewing a grant of summary judgment, we must examine the record in the light most favorable to the non-moving party.  ***Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 278 (Pa. Super. 2016)

Consultant's only claim in this action was for unjust enrichment.  Unjust enrichment actions are subject to a four-year statute of limitations.  42 Pa.C.S. § 5525(a)(4); ***Sevast v. Kakouras***, 915 A.2d 1147, 1153 (Pa. 2007). Generally, the statute of limitations begins to run as soon as the right to institute and maintain the suit arises.  ***Sevast***, 915 A.2d at 1153; ***Morgan v. Petroleum Products Equipment Co.***, 92 A.3d 823, 828 (Pa. Super. 2014).

The elements of a cause of action for unjust enrichment are 1) a benefit conferred on the defendant by the plaintiff, 2) the appreciation of such benefit by the defendant, and 3) the acceptance and retention of such benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value.  ***Gutteridge v. J3 Energy Group, Inc.***, 165 A.3d 908, 917 (Pa. Super. 2017) (*en banc*); ***Discover Bank v. Stucka***, 33 A.3d 82, 88 (Pa. Super. 2011).  It was undisputed that the benefit alleged by Consultant as the basis of its claim, remediation beyond the scope of the Contract, had been conferred on Musser by Consultant and retained by Musser

by or before 2009. Consultant's president admitted that by 2006 or 2007, Consultant had performed remediation in excess of the amount that would have been required for the release of regular gasoline described in the Contract and Consultant represented to its insurer that in 2008, the remediation costs had already exceeded the Contract price. Herman Dep. at 299-301; 4/3/09 AIG Letter at 2. Indeed, Consultant in its brief admits that by 2008 and 2009 it had incurred remediation costs beyond those covered by the Contract. Appellant's Brief at 27 n.15. Consultant therefore had the right to institute and maintain suit on its unjust enrichment claim more than four years before it filed suit in 2014.

Consultant argues that its action was not time-barred solely on the ground that the statute of limitations was tolled by the discovery rule. The discovery rule applies where the plaintiff is unable, despite the exercise of reasonable diligence, to know of his injury or its cause. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983); *Communications Network International, Ltd. v. Mullineaux*, 187 A.3d 951, 961 (Pa. Super. 2018); *Mariner Chestnut Partners, L.P.*, 152 A.3d at 279. Where, as here, the action was filed beyond the date that the applicable limitations period would ordinarily have expired, the burden of proof is on the plaintiff to prove that its action is timely under the discovery rule. *Communications Network International, Ltd.*, 187 A.3d at 961;

*Sabella v. Appalachian Development Corp.*, 103 A.3d 83, 92-93 (Pa. Super. 2014).

Under the discovery rule, the statute of limitations is tolled and does not begin to run until the plaintiff knew or reasonably should have known of his injury and its cause. *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005); *Sabella*, 103 A.3d at 92; *Morgan*, 92 A.3d at 828. Consultant admits that it knew of its injury by 2009. Appellant's Brief at 27 n.15 ("[Consultant]'s injury, **which it discovered between 2008 and 2009**, was the significant operating costs it started to incur above and beyond those covered in the [Contract]") (emphasis added). Consultant asserts, however, that it did not discover the cause of its injury until its review of the PADEP file in May 2011 of the existence of diesel contamination and its review of additional files in 2012.

The fact that Consultant did not actually know of the cause of its injury is not by itself sufficient to satisfy the discovery rule; mere lack of knowledge, mistake, or misunderstanding do not toll the running of the statute of limitations. *Pocono International Raceway, Inc.*, 468 A.2d at 471; *Mariner Chestnut Partners, L.P.*, 152 A.3d at 279. Rather, the determinative question is what it would have known if it had exercised reasonable diligence. *Fine*, 870 A.2d at 858; *Communications Network International, Ltd.*, 187 A.3d at 962; *Morgan*, 92 A.3d at 828.

> [T]he question in any given case is not, what did the plaintiff know of the injury done him? But, what might he have known, by the

- 13 -

> use of the means of information within his reach, with the vigilance the law requires of him?

*Morgan*, 92 A.3d at 828 (quoting *Fine*). Reasonable diligence is an objective standard. *Ford v. Oliver*, 176 A.3d 891, 904 (Pa. Super. 2017); *Mariner Chestnut Partners, L.P.*, 152 A.3d at 279; *Morgan*, 92 A.3d at 829. Under the discovery rule, the statute of limitations begins to run when the injured party is aware of sufficient critical facts to put him on notice that a wrong has been committed and that he needs to investigate to determine whether he is entitled to redress. *Communications Network International, Ltd.*, 187 A.3d at 961.

Consultant's contention that it acted with reasonable diligence does not automatically create a genuine dispute of material fact that must be decided by a jury. Whether a complaint is filed within the limitations period is a matter of law for the court to determine. *Sevast*, 915 A.2d at 1153; *Communications Network International, Ltd.*, 187 A.3d at 962. A jury question exists where there are disputes of fact concerning the plaintiff's knowledge or ability to know of the injury or its cause or where reasonable minds could disagree on whether the plaintiff acted with reasonable diligence. *Sabella*, 103 A.3d at 92-93; *Morgan*, 92 A.3d at 829. Where, however, the facts concerning the plaintiff's knowledge are undisputed and reasonable minds would not differ in finding that the plaintiff should have known of the injury and its cause, there is no jury question and the court may determine that the action is untimely under the discovery rule. *Ford*, 176 A.3d at 904;

*Mariner Chestnut Partners, L.P.*, 152 A.3d at 279.  "Where the facts are neither disputed nor close, the decision on reasonableness is made by the court as a matter of law, instead of by the jury as a matter of fact." *Sabella*, 103 A.3d at 92 (quoting *Bickell v. Stein*, 435 A.2d 610 (Pa. Super. 1981)).

Here, there was no conflicting evidence concerning Consultant's knowledge or investigative efforts; the basis for the summary judgment was Consultant's president's own testimony.  This testimony established that Consultant knew by 2006 that it was remediating contamination beyond the release referenced in the Contract.  Consultant's president admitted that he believed by 2006 based on the length of the remediation that there must have been a release of something other than regular unleaded gasoline:

> A. … Our average time for a gasoline only site, which is on the record and documented, is anywhere between two months and 18 months. Anything that goes beyond 18 months to two years, there's something else involved, because gasoline cleans up quickly no matter how difficult the formation as long as our system is installed properly. And they were all installed properly.
> 
> \*          \*          \*
> 
> Q. … Once this remediation went beyond 24 months, did you then realize something else had to be going on?
> A. We started operating the system in 2004. By the time 2006 rolled around, I started questioning the Mussers. 2007, 2008, I started questioning the Mussers and the Fund [USTIF] as to whether or not they missed something. So, yes, as soon as we exceeded the 24-month period, I started to question the people that had knowledge of the site; the Fund and the Mussers.

Herman Dep. at 299, 301-02.  Indeed, Consultant already had notice at that time of possible diesel contamination as a cause.  Consultant's president admitted that when Consultant signed the Contract it knew that diesel had

been sold on the Property and that it had the first five pages of the Closure Report in its possession long before 2006. *Id.* at 75, 80, 379. That portion of the Closure Report showed that there had been a diesel tank on the Property and referred to "presumed diesel-impacted soil" on the Property. Closure Report at 2, 4.

Moreover, Consultant's president's testimony established that Consultant could have immediately and easily learned the cause of the injury with minimal effort. Consultant's president admitted that the full Closure Report showed the cause of its injury on which it based its complaint, that there had been additional releases in 1999 and the contamination included diesel fuel. Herman Dep. at 86, 104-05, 163-64, 168-70. He testified, however, that Consultant made no attempt to obtain the full Closure Report, even though he knew that Consultant did not have the complete Closure Report, and made no attempt to examine PADEP's publicly available file that contained the full Closure Report until May 2011, years later. Herman Dep. at 89, 92-95, 154-60, 167-68, 347, 350, 404. Such a failure by the plaintiff to make minimal efforts to obtain and examine available documents of which it is aware constitutes lack of reasonable diligence as a matter of law. *Ford*, 176 A.3d at 905 (failure to obtain and read recorded deed as a matter of law did not constitute reasonable diligence, because information was available in recorded deed, action was properly dismissed as untimely under discovery rule); *Mariner Chestnut Partners, L.P.*, 152 A.3d at 280 (where limited

partners were aware of transactions, failure to exercise right to review partnership books did not constitute reasonable diligence).

Consultant did make oral inquiries to Musser, USTIF, and PADEP in 2006, 2007 or 2008 and was told in response that they knew only of the 1997 release of unleaded gasoline. Herman Dep. at 301-03. This lack of information, however, did not give Consultant any reason not to further investigate or to delay for years seeking readily available documents that it knew existed. Consultant does not point to anything in the record showing that it was given information that led it to believe that there was any reason other than release of other contaminants that explained why the remediation exceeded the length of a gasoline-only remediation. To the contrary, Consultant's president admitted that it did not learn any new information after 2006 that caused it to review PADEP's files in May 2011:

> Q. What changed in May of 2011 that finally made you think you should do a DEP file review?
> A. I-- I didn't believe people anymore. You know, I couldn't believe that someone would hide information from me. I guess I just couldn't believe someone would hide information from me on the original contract. And I'm an honest person. And it just took me a while to realize that maybe somebody wasn't giving me all the facts.

*Id.* at 350.

Consultant argues that its delay could be viewed as reasonable because it did not have notice before 2011 that Musser had known of the diesel and other additional releases and failed to disclose that information. That argument fails because any such alleged misrepresentations are irrelevant to

the cause of action that Consultant asserted in this case. Consultant did not plead any cause of action for fraud or misrepresentation against Musser.[4] Rather, its complaint set forth only a claim for unjust enrichment. As discussed above, unjust enrichment requires only the conferring of a benefit, appreciation of the benefit, and acceptance and retention of the benefit, none of which require proof of misrepresentation or wrongdoing by the defendant.

Consultant also argues that its failure to discover the cause of its injury was excused by the possibility that the continued contamination might be caused by subsequent owners of the Property, not by the condition of the Property at the time of the Contract, and that it allegedly also investigated that possibility in the 2006-2011 period. Appellant's Br. at 15 & n.5, 25-26; Appellant's Reply Br. at 5-6. These arguments are likewise without merit. Consultant cites to nothing in the record that shows that such a sale of the Property occurred,[5] and does not point to any evidence in the record that supports the contention that Consultant believed that subsequent owners

_____

[4] Such a claim would have been subject to a far shorter two-year statute of limitations, 42 Pa.C.S. § 5524(7), which, given Consultant's actual knowledge in May 2011, would have expired in May 2013, before this action was filed.

[5] While there are references to sale of the Property in transcripts of the depositions of Leroy and Mary Musser that Consultant has included in the Reproduced Record, those transcripts were apparently never filed in the trial court and do not appear in the certified record. Because the Musser deposition transcripts are not in the certified record, this Court may not consider them. *MacPherson v. Magee Memorial Hospital for Convalescence*, 128 A.3d 1209, 1224 (Pa. Super. 2015) (*en banc*); *Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa. Super. 2013).

might be the cause of the lengthy remediation or that it conducted any investigation of this possible alternative cause.

Mere allegations, unsupported by affidavits, admissions, testimony or other evidence, as a matter of law are not sufficient to create a genuine issue of material fact in response to a summary judgment motion. Pa.R.C.P. 1035.3 (in response to a summary judgment motion "the adverse party may not rest upon the mere allegations or denials of the pleadings" but must identify "evidence in the record"); **American Southern Insurance Co.**, 203 A.3d at 227; **CitiMortgage v. Barbezat**, 131 A.3d 65, 69-70 (Pa. Super. 2016). Moreover, factual allegations by counsel in a brief are not evidence on which a court may make a decision. **Lin v. Board of Revision of Taxes of City of Philadelphia**, 137 A.3d 637, 645-46 (Pa. Cmwlth. 2016); **School District of Pittsburgh v. Provident Charter School for Children With Dyslexia**, 134 A.3d 128, 143 n.27 (Pa. Cmwlth. 2016) (*en banc*). Counsel's unsupported statements therefore cannot show that there was any genuine dispute of fact as to when Consultant should have known of the injury and its cause.

Because the undisputed facts established that Consultant knew or should have known of its injury and its cause more than four years before it filed this action in 2014, the action was barred by the statute of limitations. Accordingly, we affirm the trial court's grant of summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2020